No. 24-8071

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

Jake Stanley DeWilde

*Plaintiff - Appellant,*

v.

Attorney General of the United States; Director of the
Bureau of Alcohol, Tobacco, Firearms, and Explosives,

*Defendants - Appellees.*

---

On Appeal from the United States District Court for the District of Wyoming
The Honorable Chief Judge Scott W. Skavdahl
No. 2:24-cv-00084-SWS

---

## APPELLANT'S OPENING BRIEF

---

ORAL ARGUMENT IS NOT REQUESTED.

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................... i

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF RELATED CASES ...................................................... vi

GLOSSARY .............................................................................................. vii

JURISDICTION.......................................................................................... 1

STATEMENT OF THE ISSUE.................................................................... 1

STATEMENT OF THE CASE..................................................................... 1

   A. Statutory Background ......................................................................... 1

   B. Procedural History .............................................................................. 2

SUMMARY OF THE ARGUMENT .......................................................... 3

ARGUMENT .............................................................................................. 5

   I.   Under Supreme Court Precedent, the Possession of an M16 Service Rifle
is Protected by the Second Amendment..................................................... 5

      A. *Standard of Review* ........................................................................ 5

      B. *The Plain Text of the Second Amendment Presumptively Protects
the Possession of an M16*................................................................ 5

         *1. The District Court Improperly Determined That 18 U.S.C.
§ 922(o) Cannot be Facially Challenged*............................. 5

2.  *The District Court Improperly Determined That the Plain Text of the Second Amendment Does Not Presumptively Protect the Possession of an M16* ....................................15

C.  *There is no Historical Tradition of Prohibiting the Possession of The Standard-Issue Service Rifle of the United States Military* ....20

CONCLUSION ......................................................................23

CERTIFICATE OF COMPLIANCE......................................................24

CERTIFICATE OF SERVICE .............................................................25

DISTRICT COURT ORDER GRANTING DEFENDANTS' 12(b)(6) MOTION TO DISMISS ....................................................................ATTACHMENT 1

DISTRICT COURT JUDGMENT IN A CIVIL ACTION ..........ATTACHMENT 2

# TABLE OF AUTHORITIES

## CASES

*Caetano* v. *Massachusetts,* 577 U.S. 411 (2016).....................................................11

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ..................................................
................................... 4, 5, 6, 7, 8, 9, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22

*Doe v. Rocky Mountain Classical Acad*., 99 F.4th 1256, 1259 (10th Cir. 2024) ......5

*Harrel v. Raoul*, 144 S. Ct. 2491 (July 2, 2024)......................................................13

*John Doe v. City of Albuquerque*, 667 F.3d 1111 (10th Cir. 2012) ...........................
................................................................................. 4, 10, 11, 13, 14, 15, 20

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36 (1961) ..................................................6

*New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. 1 (2022).......................
................................ 1, 3, 4, 5, 6, 7, 8, 9, 11, 13, 14, 15, 16, 17, 19, 20, 21, 22

*People v. Yanna*, 297 Mich. App. 137 (Mich. Ct. App. 2012) ................................11

*State v. Kessler*, 614 P.2d 94 (Ore. 1980)................................................................16

*United States v. Miller,* 307 U.S. 174 (1939) ...............................................16, 18, 19

*United States v. Morgan*, No. 23-10047-JWB (D. Kan. Aug. 26, 2024) ....................
........................................................................ 7, 11, 12, 15, 16, 17, 18, 20, 22

*United States v. Morgan*, No. 24-3141 (10th Cir. Sep. 20, 2024)............................vi

*United States v. Rahimi*, 602 U.S. ___ (2024).........................................9, 13, 14, 22

*United States v. Salerno*, 481 U.S 739 (1987)..................................3, 4, 7, 10, 11, 13

*United States v. Shobert*, No. 24-8058 (10th Cir. Aug. 30, 2024)...........................vi

*Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023)..........................................19, 20

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442

(2008) ...................................................................................................9, 10, 13, 15

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. II ...................................................................................................5

## STATUTES

18 U.S.C. § 922(g)(1)................................................................................................19

18 U.S.C. § 922(g)(8)................................................................................................14

18 U.S.C. § 922(o) ............................................... v, 1, 2, 6, 7, 8, 9, 10, 11, 12, 21, 22

Firearms Owners' Protection Act, Pub. L. No. 99-308 § 1(b)(2), 100 Stat. 449

(1986) ..............................................................................................................1

## <u>RULES</u>

Fed. R. App. P. 27(d)(2)(A) ........................................................................24

Fed. R. App. P. 32(a)(5) ..............................................................................24

Fed. R. App. P. 32(a)(6) ..............................................................................24

Fed. R. App. P. 32(f) ...................................................................................24

## <u>OTHER AUTHORITIES</u>

David L. Faigman, *Defining Empirical Frames of Reference in Constitutional*

    *Cases: Unraveling the As-Applied Versus Facial Distinction in Constitutional*

    *Law*, 36 *Hastings Const. L. Q.* 631 (2009) .......................................................9

Edgar Stanton Maclay, *A History of American Privateers* (1899) ...........................8

J. Pomeroy, An Introduction to the Constitutional Law of the United States (1868)

    ...............................................................................................15

Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule*

    *Requirement*, 48 Am. U.L.Rev. 359, 387 (1998) ...........................................10

## STATEMENT OF RELATED CASES

The following appeals are similar or related to the instant appeal:

- *DeWilde v. United States*, No. 23-8054 (10th Cir. Apr. 10, 2024)[1]

- *United States v. Morgan*, No. 24-3141 (10th Cir. Sep. 20, 2024)

- *United States v. Shobert*, No. 24-8058 (10th Cir. Aug. 30, 2024)

*DeWilde I* is a related prior appeal, where this Court "affirm[ed] [the district court's] dismissal of Mr. DeWilde's [constitutional challenge to 18 U.S.C. § 922(o)] for lack of standing." Att. 1 at 3 n.2. In the instant case ("*DeWilde II*"), "the [district court found] Mr. DeWilde has asserted an injury in fact sufficient to grant him standing to challenge" the constitutionality of section 922(o). *Id. Morgan* and *Shobert* additionally concerned constitutional challenges to section 922(o) in the United States District Court for the Districts of Kansas and Wyoming, respectively.

---

[1] ("*DeWilde I*").

# **GLOSSARY**

FOPA........................................................................Firearm Owners' Protection Act

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1346.

## STATEMENT OF THE ISSUE

**I.     Whether the District Court's Constitutional Analysis of 18 U.S.C. § 922(o) Comports with *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022).**

## STATEMENT OF THE CASE

### A. Statutory Background

18 U.S.C. § 922(o) (the "machinegun ban") provides:

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
>
> (2) This subsection does not apply with respect to-
>
>> (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
>>
>> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

The text of the machinegun ban was offered by Representative William Hughes as House Amendment 777 to House Resolution 4332 (the "Firearm Owners' Protection Act" or "FOPA") on April 10, 1986. Without floor discussion or debate,

the amendment was voted on by the Committee of the Whole. Representative Charles Rangel, Chairman of the committee, recorded that the amendment passed by Voice Vote. The machinegun ban was codified into law on May 19, 1986.

## B. Procedural History

Plaintiff-Appellant Jake Stanley DeWilde ("DeWilde") filed a complaint in the United States District Court for the District of Wyoming, alleging that 18 U.S.C. § 922(o) violates his Second Amendment rights and is facially unconstitutional.[2] Defendants-Appellees Attorney General of the United States and Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (collectively, "the government") moved to dismiss DeWilde's complaint. ROA at 41. The district court granted the government's motion to dismiss and entered final judgment in favor of the government, att. 1, 2, finding that DeWilde failed to state a claim upon which relief can be granted because section 922(o) "does not infringe upon the Second Amendment." Att. 1 at 13. DeWilde timely filed a notice of appeal, ROA at 154, and this appeal followed.

---

[2] DeWilde cites here to p. 5, Vol. I of the Record on Appeal (ECF No. 11). He cites to the page number of documents in Volume I of the Record on Appeal (e.g., ROA at 5) that are not attached to this brief.

## SUMMARY OF THE ARGUMENT

The district court's constitutional analysis did not comport with *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022). The Supreme Court has clearly identified the constitutional inquiry for evaluating Second Amendment challenges: "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24. Thus, there are two prongs to be evaluated. First, it is determined if the conduct falls within the plain text of the Second Amendment. Second, if the conduct is within that purview, the government must provide historical analogues to justify the challenged regulation. The district court erred because it [1] bypassed the *Bruen* analysis altogether by creating its own "no set of circumstances" facial test and [2] improperly conducted the *Bruen* analysis under the epithet of an "as-applied" application to DeWilde's challenge.

At *Bruen*'s first prong, the district court disregarded the *Bruen* inquiry altogether by conjecturing a hypothetical application of the challenged statute.[3] Misreading dicta in *United States v. Salerno*, 481 U.S. 739 (1987) to constitute a "no set of circumstances" test, the court concluded that its hypothetical application

---

[3] *See infra*, at 7-9.

3

precluded any facial challenge to the statute.[4] But this Court has held that *Salerno* did not "set[] forth a *test* for facial challenges."[5] Rather, *Salerno*'s "no set of circumstances" language "describe[es] the *result* of a facial challenge," and in this facial challenge, "[t]he relevant constitutional test" "remains the proper inquiry."[6]

After dismissing DeWilde's facial challenge, the court *sua sponte* considered DeWilde's challenge as applied to him, and correctly identified both prongs of the *Bruen* inquiry. But the court's analysis did not comport with *Bruen* at either prong. At the textual analysis, the court did not consider whether DeWilde's proposed conduct is within the purview of the Second Amendment's text, nor did it even consider *its own Second Amendment analysis* from its earlier hypothetical application. Instead, the court pointed to pre-*Bruen* dicta in *District of Columbia v. Heller*, 554 U.S. 570 (2008) and avoided the "proper inquiry" altogether. At the second prong, the court failed to conduct the analogical reasoning that must be performed comparing the "how" and "why" of the modern regulation to the "how" and "why" of the historical regulations, again relying on dicta in *Heller* in lieu of comporting with *Bruen*. Because the district court failed to perform the "relevant constitutional test" under *Bruen*, this Court should reverse its order and judgment.

---

[4] *See infra*, at 9-13.

[5] *John Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (emphasis in original).

[6] *Id*. (emphasis in original).

# ARGUMENT

I.     **Under Supreme Court Precedent, the Possession of an M16 Service Rifle is Protected by the Second Amendment**

A.     *Standard of Review*

This Court reviews *de novo* "a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Doe v. Rocky Mountain Classical Acad*., 99 F.4th 1256, 1259 (10th Cir. 2024).

B.     *The Plain Text of the Second Amendment Presumptively Protects the Possession of an M16.*

The text of the Second Amendment commands:

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

In 2008, the Supreme Court's landmark decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008) defined the standard of review for Second Amendment challenges. However, for fourteen years, courts misapplied the holdings in *Heller*. Consequently, the Supreme Court in *New York State Rifle & Pistol Assn., Inc. v. Bruen,* 597 U.S. 1 (2022) clarified *Heller*'s holdings:

We reiterate that the standard for applying the Second Amendment is as follows: [1] When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. [2] The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

The analysis at *Bruen*'s first prong should be "informed by history." 597 U.S. at 19. But the analysis required at *Bruen*'s first prong is a strictly "'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language." *Id*., at 20 (quoting *Heller*, 554 U.S. at 576-577, 578). It is the *second* prong where "the government must demonstrate that the regulation is consistent with this Nation's historical *tradition* of firearm regulation." *Id*., at 17 (emphasis added). Thus, both prongs involve historical analysis, but consideration and analogical reasoning of historical *authorities* and *traditions* that "delimits the outer bounds of the right to keep and bear arms" is only performed at the second prong. *Id*., at 19.

1.      *The District Court Improperly Determined That 18 U.S.C. § 922(o) Cannot be Facially Challenged.*

There are four reasons why the district court was wrong to conclude that DeWilde cannot facially challenge section 922(o). First, the court misread *Heller* to

conclude that only bearable arms are protected by the Second Amendment's plain text. Second, the court carried that misreading to a "no set of circumstances" facial test derived from *Salerno* that this Court has rejected. Third, the court's "no set of circumstances" test contradicts controlling Supreme Court Second Amendment caselaw broadly permitting facial challenges. Fourth, the court's "no set of circumstances" test contains no reasonable limiting factor.

To start, the district court improperly determined that the Second Amendment's text only applies to *bearable* or *carriable* arms. Discussing *United States v. Morgan*, No. 23-10047-JWB (D. Kan. Aug. 26, 2024) ("*Morgan*"), the court noted *Heller*'s textual analysis of "arms" and the unremarkable fact that the term includes weapons that may be "carried." *See* Att. 1 at 6-7. Then, inferring that language as a limit, the court married its limit to a hypothetical scenario presented in *Morgan* – possession of an aircraft-mounted automatic cannon – to ultimately conclude that because such a cannon "is not a carriable weapon," "the Second Amendment [does] not apply" and "[does] not preclude § 922(o)'s [prohibition]" on M16s. *Id*., at 7. The court's premise was wrong from the start.

*Heller*'s textual analysis of "arms" did not comprise a ceiling. To the contrary, *Heller* considered the floor. The Second Amendment extends "to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." 554 U.S. at 582. The term "arms" includes "[w]eapons of offence, or

armour of defence;" "any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another;" and "instruments of offence *generally* made use of in war." *Id.*, at 581 (internal citations omitted) (emphasis in original). The Second Amendment's text "excludes secret or technical meanings that would not have been known to ordinary citizens in the founding generation." *Id.*, at 577. Yet the district court surmised that there is *at least one* technical meaning unknown: arms must be "carriable."[7] The court was incorrect.

Notably, the district court merely *inferred* that "arms" must be "carriable."[8] That is certainly because *Heller* identified no such limit, and arms that could not be carried *were* known to the founding generation. Indeed, private citizens owned cannons and warships from the time of the American Revolution through the Civil War. *See generally* Edgar Stanton Maclay, *A History of American Privateers* (1899). To the extent that *Heller* spoke of limits at the textual analysis of "arms," the Court was dismissive; *Heller* explicitly rejected the notion that "only those arms in existence in the 18th century are protected by the Second Amendment," because that argument "border[s] on the frivolous." *Id.*, at 582. The Second Amendment's text is

---

[7] Att. 1 at 7.

[8] *See id.* ("Thus, the Second Amendment applies to wearable or carriable weapons.") ("The District of Kansas readily identified a situation to which the Second Amendment would not apply (an aircraft-mounted [automatic] cannon… is not a carriable weapon), and therefore the Second Amendment would not preclude § 922(o)'s regulation of such a machinegun.").

"unqualified." 597 U.S. at 24; *also United States v. Rahimi*, 602 U.S. \_\_\_, 1 (2024) (Barrett, J., concurring). As the Supreme Court has made clear in *Heller*, *Bruen*, and *Rahimi*, <u>limits</u> on Second Amendment rights must be demonstrated by analogical reasoning of historical regulations, not by an "unqualified" textual analysis. *Id*. The court was wrong to determine that "arms" is textually limited to "bearable arms."

Second, after improperly concluding that arms that cannot be carried were not protected by the text of the Second Amendment,[9] and then asserting that the challenged statute prohibited the possession of *those* arms,[10] the court concluded that section 922(o) survives a facial challenge.[11] But this approach improperly frames the question. "The proper frame of reference for deciding constitutional cases should be an explicit component of constitutional interpretation."[12] "In determining whether a law is facially invalid, [courts] must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008). Yet the district court's facial distinction solely hinged on such an improperly-framed

---

[9] Att. 1 at 6-7.
[10] *See supra*, at 8 n.7.
[11] Att. 1 at 7 ("Mr. DeWilde has not shown that § 922(o) is unconstitutional on its face in all its potential applications… the law simply affords no relief for his facial attack upon § 922(o).").
[12] David L. Faigman, *Defining Empirical Frames of Reference in Constitutional Cases: Unraveling the As-Applied Versus Facial Distinction in Constitutional Law*, 36 *Hastings Const. L. Q.* 631, 658 (2009).

hypothetical. Relying on a "no set of circumstances" test it derived from *Grange* and *Salerno*,[13] the court dismissed DeWilde's challenge because he "has not shown that § 922(o) is unconstitutional on its face in all its *potential* applications." Att. 1 at 7 (emphasis added). But this Court has succinctly rejected the district court's "no set of circumstances" test:

> *Grange* merely supports the approach to facial challenges which involves an examination of whether the terms of the statute itself "measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain[ ] a constitutional infirmity that invalidates the statute in its entirety." Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement*, 48 Am. U.L.Rev. 359, 387 (1998). Indeed, a facial challenge is just that—a challenge to the terms of the statute, not hypothetical applications. *Salerno*'s language thus is accurately understood not as setting forth a *test* for facial challenges, but rather as describing the *result* of a facial challenge in which a statute fails to satisfy the appropriate constitutional standard. In other words, where a statute fails the relevant constitutional test (such as strict scrutiny, the *Ward* test, or reasonableness review), it can no longer be constitutionally applied to anyone—and thus there is "no set of circumstances" in which the statute would be valid. The relevant constitutional test, however, remains the proper inquiry.

*John Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (italicized emphasis in original) (underlined emphasis added).

---

[13] Att. 1 at 5 ("'[A] plaintiff can only succeed in a facial challenge by "establishing that no set of circumstances exists under which the Act would be valid," *i.e.*, that the law is unconstitutional in all of its applications.' *Washington State Grange*, 552 U.S. at 449 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987))"); *Id.*, at 7 ("DeWilde has not shown that § 922(o) is unconstitutional on its face in all its potential applications… therefore the facial challenge will be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.").

The court was wrong to preempt the "relevant constitutional test" – namely, the *Bruen* inquiry – and to instead make its own "no set of circumstances" test. *Id.* If the court's analysis had comported with *Bruen*, it would have determined that DeWilde is prohibited from engaging in protected conduct – possessing an M16 – in *every* application of section 922(o), and his facial challenge would have prevailed because "no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987).

The court did not perform analysis surrounding *any* manner or exception in which DeWilde may possess an M16. Rather, the court latched onto a hypothetical ban on the possession of aircraft-mounted automatic cannons. But cannons weren't at issue before the court. There was no evidence that cannons are machineguns, and the court had no occasion to make such a determination. The only basis for its conclusion was an unfounded assertion in *Morgan* that the definition of a machinegun "seem[ed] to encompass" such a cannon.[14,15] The court provided no

---

[14] Att. 1 at 6 (quoting *Morgan*).

[15] The defect in *Morgan*'s analysis of the legal definition of "machinegun" is self-evident. That analysis concluded that the definition is so broad that it "seems" to include "a stun gun." *Id.* But "stun guns are widely owned and accepted as a legitimate means of self-defense across the country" and "'[h]undreds of thousands'" of them "'have been sold to private citizens.'" *Caetano* v. *Massachusetts,* 577 U.S. 411, 420 (2016) (Alito, J., concurring) (quoting *People v. Yanna*, 297 Mich. App. 137, 144 (Mich. Ct. App. 2012)). On the other hand, the transfer and possession of machineguns is prohibited. *See* 18 U.S.C. § 922(o). And the government *always* prosecutes the unlawful possession of a

instance of a citizen (law-abiding or not) ever possessing, or even attempting to possess, an aircraft-mounted automatic cannon. The court's determination – and the thrust of its flawed "no set of circumstances" test – was made without any judicial notice whatsoever that the hypothetical possession or ban of an aircraft-mounted automatic cannon would be affected by the statute at issue, some other statute, or has been at issue in *any* case *ever*. "The delicate power of pronouncing an Act of Congress unconstitutional is not to be exercised with reference to hypothetical cases thus imagined." *United States v. Raines*, 362 U.S. 17, 22 (1960). In the instant case, DeWilde desires to possess an M16, and he is prohibited from exercising that protected conduct in *every* application of section 922(o).

*Even if* the district court's conclusion that arms that cannot be carried are unprotected was correct (it is not), the court's "no set of circumstances" test might have been understandable if the exceptions in 18 U.S.C. § 922(o)(2) included the following third exception:

(C) any lawful transfer or lawful possession of a bearable machinegun.

---

machinegun. Therefore, a stun gun is not a machinegun, and *Morgan*'s analysis of what "seems" to be a machinegun – such as an aircraft-mounted automatic cannon – which was incorporated by the district court in the instant case, cannot support the court's misreading of *Heller*'s textual analysis, nor its improper "no set of circumstances" test. Att. 1 at 6-7 (quoting *Morgan*).

But no such exception exists.[16] Furthermore, even if that exception did exist, the "relevant constitutional test," as settled in *Bruen*, "remains the proper inquiry." *Doe*, 667 F.3d 1111, 1127. Because "no set of circumstances exist" under the statute permitting DeWilde's possession of an M16, "the law is unconstitutional in all of its applications." *Salerno*, 481 U.S. at 745; *Washington State Grange*, 552 U.S. at 449.

Third, the district court's "no set of circumstances" test contradicts controlling Supreme Court Second Amendment caselaw which confirms this Court's conclusion that "the relevant constitutional test" "remains the proper inquiry" in a facial challenge. *Doe*, 667 F.3d at 1127. *Heller*, *Bruen*, and *Rahimi* all involved facial challenges to statutes prohibiting conduct presumptively protected by the text of the Second Amendment. All of those cases required and performed a constitutional analysis of the statutes in light of historical regulations surrounding the Second Amendment. The challengers in *Heller* and *Bruen* prevailed in facially overturning the challenged statutes. While Mr. Rahimi's facial challenge failed, it wasn't for a lack of protected conduct at the textual analysis. Rather, pursuant to "the relevant constitutional test," the government identified historical regulations that justified the

---

[16] The question of "what makes a weapon 'bearable'" is an "essential question[]" that has been left "open" by the Supreme Court's "minimal guidance." *See Harrel v. Raoul*, 144 S. Ct. 2491, 2492 (July 2, 2024) (Statement of Thomas, J.). Nevertheless, this Court need not define "bearable." In the instant case, it is undisputed that an M16 is a "bearable" machinegun, and this hypothetical exception would thus apply to an M16.

challenged regulation using analogical reasoning.[17] None of those cases involved a "no set of circumstances" test prior to or as a part of the textual analysis. The Supreme Court considered each of them with "the proper inquiry." 667 F.3d at 1127.

Finally, the district court's approach contains no reasonable limiting factor. Under the court's "no set of circumstances" test, a broad prohibition of constitutionally-protected conduct is permissible so long as that prohibition encompasses *some hypothetical* conduct that *may* be *potentially* unprotected. If that were the standard, *Bruen* would have "been required to reach the opposite conclusion." *Doe*, 667 F.3d at 1125 n.8. But just as this Court acknowledged that flaw, *see generally id*., the Supreme Court also rejected similarly-sweeping arguments. *See* 597 U.S. at 31 ("[T]here is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place' simply because it is crowded and protected generally by the New York City Police Department." New York "define[d] the category of 'sensitive places' far too broadly.") (rejecting New York's reliance on the "sensitive places" dicta in *Heller*, 554 U.S. at 626).

---

[17] "Section 922(g)(8) restricts gun use to mitigate demonstrated threats of physical violence, just as the surety and going armed laws do." *Rahimi*, slip op. at 14 (referencing historical "affray" statutes under the "going armed laws" moniker).

2.       *The District Court Improperly Determined That the Plain Text of the Second Amendment does not Presumptively Protect the Possession of an M16.*

After adopting *Morgan*'s hypothetical case in an improper "no set of circumstances" test, and dismissing DeWilde's facial challenge, the district court "liberally construed [DeWilde's complaint] to also assert an as-applied challenge."[18] Att. 1 at 7. There, the court correctly identified the first question that *Bruen* requires be answered: "Does the Second Amendment's plain text cover the individual's alleged or desired conduct, which would presumptively protect such conduct?" *Id.*, at 8. But that is where the district court's analysis sharply departed from *Morgan*.

The text of the prefatory clause and the text of the operative clause of the Second Amendment both independently demonstrate that the possession of an M16 is presumptively protected conduct.

*Heller* determined that the text of the operative clause guarantees the "individual right to possess" arms. 554 U.S. at 592. Thus, the possession of an M16

---

[18] DeWilde submits that the district court's *Bruen* analysis under section 2, 2.1, and 2.2 of the court's order (Att. 1 at 7-13) should not have been performed under the pretext of an as-applied challenge. Rather, the court should have independently comported with *Bruen*, which stipulates "[t]he relevant constitutional test" in a Second Amendment challenge. *Doe*, 667 F.3d at 1127. That independent analysis should have determined that the challenged statute "is unconstitutional in all of its applications," and is, thus, facially unconstitutional. *Washington State Grange*, 552 U.S. at 449.

is presumptively constitutional if an M16 is an "arm." An M16 is a bearable machinegun. A machinegun is defined as a firearm. *See* 26 U.S.C. § 5845. "[A]ll firearms constitute[] 'arms.'" 554 U.S. at 581. "[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms," *Id*., at 582. *Morgan*'s textual analysis concluded the same; because a "machinegun" may be "carried in the hand," it is a "bearable arm[] within the plain text of the Second Amendment" "by *definition*." *Id*., at 4 (emphasis added). Therefore, the "Constitution presumptively protects" the possession of an M16 under the "plain text" of the operative clause of the Second Amendment. *Bruen*, 597 U.S. at 17. The analysis at *Bruen*'s first prong is satisfied, and the analysis at the second prong must be conducted.

However, separately and independently, and especially relevant in the instant case, the possession of an M16 is presumptively protected by the text of the prefatory clause. The Founders and militiamen used standard-issue military weapons to secure our independence during the American Revolution. "[O]rdinarily when called for [militia] service [able-bodied] men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time." *Heller,* 554 U.S. at 624 (alterations in original) (quoting *Miller*, 307 U.S. at 179). "In the colonial and revolutionary war era, [small-arms] weapons used by militiamen and weapons used in defense of person and home were one and the same." *Id*., at 624-25 (alteration in original) (quoting *State v. Kessler*, 614 P.2d 94, 98 (Ore. 1980)). Thus, when the

16

Founders wrote the Second Amendment, "arms" was undoubtedly understood to refer to standard-issue service weapons that were most suitable in militia and military service. This understanding supports the purpose of the text of the prefatory clause, which is "to preserve the militia." *Heller*, 554 U.S. at 624. "[R]ifles like the M-16 are now standard-issue military weapons." Brief for the United States as Amicus Curiae, p. 22, *Heller*, 554 U.S. 570. Because the M16 is the "'lineal descendant' of the weapons used in Founding-era militia operations," the possession of an M16 is presumptively protected by the text of the prefatory clause of the Second Amendment. *Id*.

The district court, however, did not perform this "'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language." 597 U.S. at 20 (quoting 554 U.S., at 576-577, 578). Rather, the court relied on pre-*Bruen* dicta from *Heller* surrounding historical traditions at the second prong, along with post-*Bruen* district court decisions that followed the same. *See generally* att. 1 at 8-11. This was in stark contrast to *Morgan*'s textual analysis, which identified three obvious flaws with that approach and resoundingly rejected it.

First, the district court's "interpretation of *Heller* relie[d] exclusively on dicta… that predates the historical analysis mandated in *Bruen*—machineguns were not at issue in *Heller*." *Morgan*, at 4. "Second, the [court's] interpretation [ran] directly counter to the essential analysis in *Heller*: just as the Fourth Amendment

applies to modern 'searches,' the Second Amendment applies to arms that did not exist at the country's founding." *Id.* (quoting 554 U.S. at 582). Third, *Morgan* rejected "rel[iance] on comments in *Heller* regarding [*Miller*] for the proposition that machineguns are not covered by the Second Amendment." *Id.*, at 4.

The district court explained that *Miller* stands for the proposition that arms not "in common use" are unprotected at the textual analysis. *See generally* att. 1 at 8-11. And the court conceded that "weapons used by the founders' militia were necessarily the weapons used by the common citizen." *Id.*, at 9. Nonetheless, the court wrote that "DeWilde's reliance on the standing military's use of a weapon as justification" for textual protection was "misguided and incorrect." *Id*. But *Morgan* observed that "over half of the opinion in *Miller* was devoted to explaining how, in the years preceding and immediately following the enactment of the Second Amendment, one of the lawful purposes for which law-abiding citizens possessed modern (for that era) firearms was for service in the militia." *Morgan*, at 4 (citing *Miller*, 307 U.S. 174, 178–82).

Regardless, the district court justified its analysis by concluding that "[t]imes and sentiments have… significantly changed" because "the modern-day standing military's weapons greatly exceed those of the average citizen." Att. 1 at 9. But the Supreme Court has <u>squarely</u> rejected the district court's conclusion:

It may well be true today that a militia, to be as effective as militias in the 18th century, would require sophisticated arms that are highly unusual in society at large. Indeed, it may be true that no amount of small arms could be useful against modern-day bombers and tanks. But the fact that modern developments have limited the degree of fit between the prefatory clause and the protected right <u>cannot change our interpretation of the right</u>.

*Heller*, 554 U.S. at 627-28 (emphasis added).

The government succinctly summarized the court's improper methodology when it offered it to support dismissal of DeWilde's facial challenge:

As the Tenth Circuit recently explained, "the emergence of a new test" in *Bruen* "doesn't necessarily invalidate . . . earlier precedent." *Vincent v. Garland*, 80 F.4th 1197, 1200 (10th Cir. 2023). In particular, precedent that relies on *Heller*'s explanations of the limitations of the Second Amendment right remains valid. *Vincent* reaffirmed prior precedent upholding 18 U.S.C. § 922(g)(1), the felon-in-possession ban, based on *Heller*'s explanation that it was not "cast[ing] doubt on longstanding prohibitions on the possession of firearms by felons." *Vincent*, 80 F.4th at 1199 (quoting *Heller*, 554 U.S. at 626). Similarly, earlier cases relying on *Heller*'s explanation that the Second Amendment protects weapons "in common use," but not "dangerous and unusual weapons," remain persuasive.

ROA at 66-67 (Memorandum in Support of [The Government's] Motion to Dismiss the Complaint).

Accordingly, the district court determined that, at *Bruen*'s first prong, M16s are unprotected because they are not "'in common use.'" Att. 1 at 8-9 (quoting *Heller*, 554 U.S. at 627 (quoting *Miller*, 307 U.S. at 179)). But that analysis was wrong. The Supreme Court has rejected this Court's methodology in *Vincent* of relying on "earlier precedent" "that relies on *Heller*'s explanations of the limitations of the

Second Amendment." ROA at 66; *see Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023), *cert. granted, vacated, remanded*, 603 U.S. ___ (2024). The Supreme Court has vacated and remanded *Vincent* because it "means what it says: the constitutionality of laws regulating the possession of firearms under the Second Amendment must be evaluated under the *Bruen* framework." *Morgan*, at 9. *Heller*'s "earlier precedent" is not the "relevant constitutional test." *Doe*, 667 F.3d at 1127. *Bruen*'s textual analysis is the "proper inquiry," and DeWilde has demonstrated that the possession of an M16 is presumptively constitutional under *that* analysis. *Id*.; *see supra*, at 15-17 (performing *Bruen*'s textual analysis in the instant case).

C.    *There is no Historical Tradition of Prohibiting the Possession of The Standard-Issue Service Rifle of the United States Military.*

The test in *Bruen* "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." 597 U.S. at 26. *Bruen* explained how, at the second prong, the government carries the "burden" of providing historical analogues to support the challenged regulation. *Id*., at 33-34. Courts must use analogical reasoning to compare those historical regulations to modern regulations. The government must provide a "well-established and representative historical *analogue*, not a historical *twin*." *Id*., at 30 (emphasis in original). The "'central' considerations when engaging in an analogical inquiry" should be "how and why the regulations burden a law-

abiding citizen's right to armed self-defense." *Id*., at 29. The district court erred when it sidestepped the requirement set forth in *Bruen* and instead relied on a perfunctory reading of dicta in *Heller*. *See* att. 1 at 11 ("§ 922(o) is *well supported* by the historical tradition of regulating the keeping and bearing of dangerous and unusual weapons" because the "Supreme Court has acknowledged there exists 'the historical tradition of prohibiting the carrying of "dangerous and unusual weapons."'" (quoting 554 U.S. at 627) (emphasis added)).

Heller itself demonstrates that the court's analysis was wrong. Rather than performing analogical reasoning of the dangerous and unusual authorities mentioned in *Heller*, the district court simply took the words of the "dangerous and unusual" exception at face value with no analysis whatsoever of what the authorities actually meant. But that is not how analogical reasoning is performed. *Heller* assiduously qualified that dicta, insisting that "there will be time enough to expound upon the *historical justifications* for the exceptions we have mentioned if and when those exceptions come before us." 554 U.S. at 635 (emphasis added). The possession of an M16 was not before *Heller*, it was before the district court, and the court was thus required to perform analogical reasoning of those historical justifications.

If the court had done so, it should have found that the authorities cited by the government, *Heller*'s authorities prohibiting the carrying of dangerous and unusual weapons, are not acceptable historical analogues to justify the machinegun ban. "The

Supreme Court addressed this category of laws at some length in both *Bruen* and *Rahimi*, describing them as prohibitions against 'going armed' or 'affray,' the latter word being a term derived from a French word meaning 'to terrify.'" *Morgan*, at 7 (quoting *Rahimi*, 144 S. Ct. at 1900–01; *Bruen*, 597 U.S. at 46). "Far from banning the carrying of any *class* of firearms," the dangerous and unusual authorities in *Heller* "merely codified the existing common-law offense of bearing arms to terrorize the people[.]" 597 U.S. at 47. Those "going armed laws" are similar to modern laws that "appl[y] to individuals" who have "demonstrated threats of physical violence." *Rahimi*, slip op. at 14.

"In contrast with the aforementioned historical examples, § 922(o) says nothing about the manner in which machineguns are carried or displayed. Instead, § 922(o) criminalizes the mere possession of such weapons without regard to how the possessor uses them." *Morgan*, at 8. Those historical restrictions on the *manner* in which arms may be carried do not possess the same *how* nor *why* that the machinegun ban possesses. But the district court did not consider the *how* nor *why*. Instead, the court waived the *Bruen* inquiry altogether and merely deferred to dicta in *Heller*. Just as the court failed to perform "the proper inquiry" at *Bruen*'s first prong, so too it failed at the second.

## **CONCLUSION**

For the reasons stated above, the Court should vacate and reverse the order and judgment of the district court.

DATED this 11th day of November, 2024.     Respectfully Submitted,

*/s/ Jake S. DeWilde*

Jake S. DeWilde

PO Box 267

Wapiti, WY 82450

jake.dewilde@gmail.com

(307) 587-4524

**Certificate of Compliance with Type-Volume Limit**

**Typeface Requirements and Type Style Requirements**

1.      This document complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains <u>5530</u> words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point typeface.

DATED this 11th day of November, 2024.     Respectfully Submitted,

*/s/ Jake S. DeWilde*

Jake S. DeWilde

PO Box 267

Wapiti, WY 82450

jake.dewilde@gmail.com

(307) 587-4524

**Certificate of Service**

I, Jake DeWilde, hereby certify that I filed the foregoing document via the Court's electronic-filing system; all parties in this case have consented to electronic service; and the electronic filing of the foregoing document constitutes proof of service to all parties in this case.

DATED this 11th day of November, 2024.     Respectfully Submitted,

*/s/ Jake S. DeWilde*

Jake S. DeWilde

PO Box 267

Wapiti, WY 82450

jake.dewilde@gmail.com

(307) 587-4524