**[ORAL ARGUMENT NOT REQUESTED]**

**No. 24-8071**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

———————

JAKE STANLEY DEWILDE,

Plaintiff-Appellant,

v.

UNITES STATES ATTORNEY GENERAL, *et al.*

Defendants-Appellees.

———————

On Appeal from the United States District Court
for the District of Wyoming
District Court Case No. 2:24-cv-00084 (Judge Skavdahl)

———————

**BRIEF FOR APPELLEES**

———————

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney
  General*

ERIC HEIMANN
  *Acting United States Attorney*

MICHAEL S. RAAB
BEN LEWIS
  *Attorneys, Appellate Staff
  Civil Division, Room 7250
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 514-2494*

# TABLE OF CONTENTS

**Page**

STATEMENT OF RELATED APPEALS

GLOSSARY

STATEMENT OF JURISDICTION ............................................................. 1

STATEMENT OF THE ISSUE ..................................................................... 1

PERTINENT STATUTES AND REGULATIONS ..................................... 1

STATEMENT OF THE CASE ..................................................................... 1

    A.    Statutory Background ................................................................ 1

    B.    Procedural History ................................................................... 3

SUMMARY OF ARGUMENT ..................................................................... 5

STANDARD OF REVIEW ........................................................................... 8

ARGUMENT .................................................................................................. 8

I.    18 U.S.C. § 922(o) complies with the Second Amendment. ................................ 8

    A.    Section 922(o) is constitutional in all of its applications, including
        as applied to machineguns like M-16 rifles. ................................................. 9

        1.    Supreme Court precedent bars DeWilde's challenge. .................... 9

        2.    The text, history, and tradition of the Second Amendment
             make clear that 18 U.S.C. § 922(o) is constitutional. ..................... 13

        3.    DeWilde's arguments specific to M-16s lack merit. ...................... 29

    B.    At the very least, Section 922(o) is not unconstitutional in all of its
        applications such that a facial challenge should prevail. ............................ 32

        1.    Not all machineguns are service rifles like M-16s. ........................ 33

2.      Not all machineguns are bearable arms like M-16s. ..................... 34

3.      DeWilde's counterarguments are unavailing. ................................ 34

CONCLUSION ................................................................................................... 39

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** <span style="float:right">**Page(s)**</span>

*Bevis v. City of Naperville*,
  85 F.4th 1175 (7th Cir. 2023) ........................................................ 10, 14-15, 15, 25, 32

*Bianchi v. Brown*,
  111 F.4th 438 (4th Cir. 2024) ........................................................................... 25

*Bonidy v. U.S. Postal Serv.*,
  790 F.3d 1121 (10th Cir. 2015) ..................................................................... 11, 12

*Bucklew v. Precythe*,
  587 U.S. 119 (2019) .............................................................................. 4-5, 33, 35

*DeWilde v. Attorney Gen. of the U.S.*,
  No. 23-8054, 2024 WL 1550708 (10th Cir. Apr. 10, 2024) ......................................... 5

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ................................ 3, 4, 6, 7, 8, 9, 10, 11, 13, 14, 15, 16
                                                      17, 19, 23, 24, 25, 29, 30, 31, 34, 36

*English v. State*,
  35 Tex. 473 (1871) ......................................................................................... 19

*Friedman v. City of Highland Park*,
  784 F.3d 406 (7th Cir. 2015) ............................................................................ 10

*Hamblen v. United States*,
  591 F.3d 471 (6th Cir. 2009) ...................................................................... 5-6, 8-9

*Hanson v. District of Columbia*,
  120 F.4th 223 (D.C. Cir. 2024) ................................................................... 10, 25

*Harrel v. Raoul*,
  144 S. Ct. 2491 (2024) .................................................................................... 34

*Heller v. District of Columbia*,
  670 F.3d 1244 (D.C. Cir. 2011) ............................................................... 10-11, 13

*Hollis v. Lynch*,
   827 F.3d 436 (5th Cir. 2016) ................................................... 3, 5, 8, 10, 28, 31

*John Doe v. City of Albuquerque*,
   667 F.3d 1111 (10th Cir. 2012) ....................................................................... 35

*Luna Perez v. Sturgis Pub. Sch.*,
   598 U.S. 142 (2023) ......................................................................................... 31

*New York State Rifle & Pistol Ass'n v. Bruen*,
   597 U.S. 1 (2022) ............................................. 4, 6, 9, 12, 13, 14, 15, 16, 17,
                                                                                                18, 22, 23, 24, 28, 29

*Nordyke v. King*,
   644 F.3d 776, 797 n.6 (9th Cir. 2011), *aff'd en banc*,
   681 F.3d 1041 (9th Cir. 2012) .................................................................... 7, 32

*Ocean State Tactical, LLC v. Rhode Island*,
   95 F.4th 38 (1st Cir. 2024) ......................................................................... 10, 25

*O'Neill v. State*,
   16 Ala. 65 (1849) .............................................................................................. 19

*Patterson v. Winn*,
   30 U.S. (5 Pet.) 233 (1831) .............................................................................. 17

*Reedy v. Werholtz*,
   660 F.3d 1270 (10th Cir. 2011) ....................................................................... 28

*Staples v. United States*,
   511 U.S. 600 (1994) ...................................................................................... 3, 26

*State v. Langford*,
   10 N.C. 381 (1824) ........................................................................................... 19

*State v. Lanier*,
   71 N.C. 288 (1874) ........................................................................................... 19

*United States v. Cox*,
   906 F.3d 1170, 1185 (10th Cir. 2018) ............................................................. 27

iv

*United States v. Fincher,*
    538 F.3d 868 (8th Cir. 2008) ........................................................................ 6, 9

*United States v. Henry,*
    688 F.3d 637 (9th Cir. 2012) .................................................................... 6, 9, 27

*United States v. Lynch,*
    881 F.3d 812 (10th Cir. 2018) ......................................................................... 8

*United States v. Maloid,*
    71 F.4th 795 (10th Cir. 2023) ........................................................................ 12

*United States v. McCane,*
    573 F.3d 1037 (10th Cir. 2009) ..................................................................... 11

*United States v. Miller,*
    307 U.S. 174 (1939) ........................................... 6, 9, 9-10, 13, 25, 31

*United States v. Morgan,*
    No. 23-CR-10047 (D. Kan. Aug. 21, 2024) .............................................. 36

*United States v. Nixon,*
    919 F.3d 1265 (10th Cir. 2019) ..................................................................... 12

*United States v. O'Brien,*
    560 U.S. 218 (2010) ........................................................................................ 27

*United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame,*
*    Unknown Caliber Serial No.: LW001804,*
    822 F.3d 136 (3d Cir. 2016) ............................................................... 5, 8, 10

*United States v. Rahimi,*
    603 U.S. 680 (2024) ............................................ 4, 6, 8, 13, 15, 16, 17, 18, 23,
    24, 25, 29, 33, 35

*United States v. Salerno,*
    481 U.S. 739 (1987) ................................................................................... 5, 33

*United States v. Serawop,*
    505 F.3d 1112 (10th Cir. 2007) ..................................................................... 12

*United States v. Thompson/Center Arms Co.,*
  504 U.S. 505 (1992) ................................................................. 26

*United States v. Zaleski,*
  489 F. App'x 474 (2d Cir. 2012) ......................................... 5, 8

*Vincent v. Garland,*
  80 F.4th 1197 (10th Cir. 2023) ............................................. 13

*Washington State Grange v. Washington State Republican Party,*
  552 U.S. 442 (2008) ................................................................. 5

## Constitution:

U.S. Const. art. I, § 8, cls. 12-13 ........................................... 30

U.S. Const. art. I, § 8, cls. 15-16 ........................................... 30

U.S. Const. amend. II ............................................................. 14

## Statutes:

Act of March 3, 1805, ch. 42, § 3, 2 Stat. 342, 343 ................ 37

Act of June 26, 1812, ch. 107, 2 Stat. 759, 759-64 ................. 38

National Firearms Act of 1934 (NFA):
  26 U.S.C. §§ 5801-5802 ......................................................... 2
  26 U.S.C. §§ 5811-5812 ......................................................... 2
  26 U.S.C. §§ 5821-5822 ......................................................... 2
  26 U.S.C. §§ 5841-5842 ......................................................... 2
  26 U.S.C. §§ 5845(a)-(b) .................................................. 2, 26
  26 U.S.C. § 5845(b) ................................................................ 1

Neutrality Act of November 4, 1939, ch. 2, § 6, 54 Stat. 4, 7 ........................................ 37

18 U.S.C. § 921(a)(24) ............................................................. 1

18 U.S.C. § 922(g)(1) .......................................................... 11, 13

18 U.S.C. § 922(g)(8) ........................................................................25, 29, 33

18 U.S.C. § 922(o) ........................................................1, 2, 3, 5, 6, 8, 13, 29

18 U.S.C. § 922(o)(1) ................................................................................... 2

18 U.S.C. § 922(o)(2)(A) ....................................................................2, 28, 32

18 U.S.C. § 922(o)(2)(B) ............................................................................. 2

28 U.S.C. § 1291 .......................................................................................... 1

28 U.S.C. § 1331 .......................................................................................... 1

Act of March 23, 1776 (Continental Congress) ...................................... 38

Act of Dec. 21, 1771, ch. 539, § 10, 1771 N.J. Laws 346 ......................... 21

Act of Jan. 29, 1795, ch. 2, 1795 Mass. Acts 436 .................................... 18

Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90 ........................................... 20

Act of Jan. 27, 1838, ch. 137, § 1, 1838 Tenn. Pub. Acts 200 .................... 20

Act of Feb. 2, 1838, ch. 101, § 1, 1838 Va. Acts 76 ................................. 20

Act of Jan. 6, 1841, Penal Code, ch. 7, § 4, 1840 Ala. Laws 148-49 ............. 20

Act of Apr. 7, 1849, ch. 278, § 1, 1849 N.Y. Laws 403 ............................. 21

Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404 .........................20-21

Act of Nov. 12, 1849, No. 36, § 2, 1849 Vt. Acts 26 ............................... 21

Act of Mar. 6, 1852, § 103, 1851 Utah Laws 137 .................................... 21

Act of Mar. 14, 1855, No. 120, § 115, 1855 La. Acts 148 ......................... 20

Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Laws 129 ............................. 20

Act of Mar. 18, 1859, § 1, 1859 Ohio Laws 56-57 ................................... 20

vii

Act of Mar. 1, 1864, ch. 128, § 1, 1864 Cal. Stat. 115 ...................................................... 20

Act of Aug. 6, 1868, No. 13, ch. 7, § 11, 1868 Fla. Laws 95 ........................................... 21

Act of Feb. 25, 1869, ch. 33, § 1, 1869 Wis. Laws 35 ...................................................... 21

Act of Feb. 27, 1869, ch. 39, § 1, 1869 Minn. Laws 50-51 .............................................. 21

Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25 ....................................... 20, 21

Act of Feb. 14, 1872, ch. 7, § 1, 1872 Wis. Laws 17 ......................................................... 2

Act of Feb. 15, 1872, ch. 7, § 1, 1872 Wis. Laws 17 ...................................................... 20

Act of Mar. 4, 1873, ch. 58, pt. 1, ch. 4, § 25, 1873 Neb. Laws 724 ............................ 20

Act of Dec. 27, 1873, ch. 226, § 168, 1873 W. Va. Acts 709 .......................................... 20

Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57 ....................................................... 20, 21

Act of Apr. 22, 1875, No. 97, § 1, 1875 Mich. Pub. Acts 136 ....................................... 21

Act of Feb. 28, 1878, ch. 46, § 1, 1878 Miss. Laws 175 ................................................. 20

Act of Mar. 5, 1879, ch. 127, § 1, 1879 N.C. Laws 231 ................................................. 20

Act of May 24, 1879, § 1, 1879 Ill. Laws 114–15 .......................................................... 20

Act of Dec. 24, 1880, No. 362, § 1, 1880 S.C. Acts 447–48 .......................................... 20

Act of Feb. 1, 1881, § 1, 1881 Colo. Laws 74 ................................................................ 20

Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts 191-92 ................................................ 20

Act of Apr. 16, 1881, § 1, 1881 Ill. Laws 73 .................................................................. 21

Act of Apr. 16, 1881, § 4, 1881 Ill. Laws 74 .................................................................. 20

Act of Mar. 6, 1882, ch. 219, § 1, 1881 Va. Acts 233 .................................................... 20

Act of Mar. 24, 1882, ch. 135, § 1, 1882 W. Va. Acts 421 ............................................. 21

Act of Mar. 29, 1882, ch. 135, § 1, 1882 W. Va. Acts 421 ............................................... 20

Act of Nov. 25, 1884, No. 76, § 1, 1884 Vt. Acts. 74-75 ................................................ 21

Act of Feb. 18, 1885, § 1, 1885 Or. Laws 33 .................................................................... 20

Act of Apr. 7, 1886, ch. 375, § 1, 1886 Md. Laws 602 ..................................................... 20

Act of May 31, 1887, No. 129, §1, 1887 Mich. Pub. Acts 144 ......................................... 20

Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231–32 ............................... 20, 21

Act of June 2, 1893, ch. 4124, § 1, 1893 Fla. Laws 52 ..................................................... 20

Act of Mar. 8, 1909, ch. 240, § 22, 1909 S.D. Laws 450 .................................................. 21

Act of Mar. 22, 1909, ch. 249, § 266, 1909 Wash. Laws 973 ........................................... 21

Act of Mar. 24, 1909, ch. 129, § 1, 1909 Me. Laws 141-42 .............................................. 21

Act of Apr. 7, 1911, ch. 128, § 1, 1911 N.J. Laws 185 ..................................................... 22

Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442 .................................................. 21

Act of Nov. 14, 1912, No. 237, § 1, 1912 Vt. Acts 310 .................................................... 21

Act of Feb. 14, 1913, No. 201, § 16, 1912 Vt. Acts 260-61 .............................................. 21

Act of Mar. 13, 1913, ch. 64, § 1, 1913 Minn. Laws 55 ................................................... 21

Act of Apr. 1, 1913, ch. 186, § 1, 1913 N.J. Laws 339 ..................................................... 21

Act of Apr. 21, 1915, ch. 133, § 17, 1915 N.H. Laws 180-81 .......................................... 21

Act of Apr. 6, 1916, ch. 137, § 1, 1916 N.Y. Laws 338-39 ............................................... 22

Act of July 3, 1918, No. 88, § 3, 1918 La. Acts 131 ......................................................... 22

Act of Feb. 18, 1921, ch. 83, § 97, 1921 Wyo. Sess. Laws 112-13 ................................... 22

Act of July 7, 1921, ch. 530, § 1, 1921 Wis. Laws 870 ..................................................... 21

Act of May 24, 1923, No. 228, Art. VII, § 704(a), 1923 Pa. Laws 386 ......................... 22

Act of Feb. 11, 1925, ch. 31, § 1, 1925 Or. Laws 42 ...................................................... 21

Act of Mar. 7, 1925, ch. 460, § 4, 1925 N.C. Laws 530 ................................................. 22

Act of June 5, 1925, ch. 3, 1925 W. Va. Acts 24-32 ...................................................... 22

Act of Apr. 16, 1926, ch. 261, 1926 Mass. Acts 256 ..................................................... 21

Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts 469 ................................................... 22

Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws 181 .................................................. 22

Act of Mar. 29, 1927, ch. 169, 1927 Del. Laws 516 ...................................................... 22

Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201 ................................................ 22

Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws 257 .................................. 21-22

Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts 413-14 .......................................... 22

Act of Apr. 27, 1927, ch. 1052, § 8, 1927 R.I. Pub. Laws 259 ....................................... 22

Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938 .................................................. 22

Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888 ........................................ 22

Act of Mar. 18, 1929, ch. 84, § 14, 1929 Ariz. Laws 247 ............................................... 22

Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777 .................................................. 22

Act of Apr. 29, 1929, ch. 190, § 1, 1929 Neb. Laws 674 ................................................ 22

Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157 ................................................ 22

Act of June 1, 1929, H.R. 498, § 1, 1929 Mo. Laws 170 ................................................ 22

Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws 813 ................................................ 22

x

Act of Feb. 25, 1931, No. 58, § 1, 1931 S.C. Acts 78 ....................................... 21

Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws 306 .................................. 22

Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws 1033 ............................... 22

Act of June 16, 1931, No. 328, § 236, 1931 Mich. Pub. Acts 671 .................... 21

Act of July 2, 1931, § 2, 1931 Ill. Laws 452 ........................................ 22

Act of July 7, 1932, No. 80, § 2, 1932 La. Acts 337 .................................22-23

Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws 245............................. 23

Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335................................. 23

Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws 489 ................................... 2

Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws 189 ........................................ 23

Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233 .............................. 23

Act of Apr. 27, 1933, No. 120, § 2, 1933 Haw. Laws 117.........................22, 23

Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219.............................. 23

Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76 .................................. 23

Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts 1288 ........................... 23

Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts 137 ................................ 23

Alaska Stat. § 11.61.200 ............................................................... 26

Ariz. Rev. Stat. Ann. § 13-3101.................................................... 26

Ariz. Rev. Stat. Ann. § 13-3102.................................................... 26

Cal. Penal Code § 32625 ............................................................ 26

Colo. Rev. Stat. § 18-12-102....................................................... 26

D.C. Code § 22-4514 ................................................................................ 26

Del. Code tit. 11, § 1444 ......................................................................... 26

Fla. Stat. § 790.221 ................................................................................. 26

Ga. Code Ann. § 16-11-122 ..................................................................... 26

Haw. Rev. Stat. § 134-8 ........................................................................... 26

720 Ill. Comp. Stat. 5/24-1 ..................................................................... 26

Ind. Code § 35-47-5-8 .............................................................................. 26

Iowa Code § 724.1 .................................................................................... 26

Iowa Code § 724.3 .................................................................................... 26

Kan. Stat. Ann. § 21-6301 ....................................................................... 26

La. Stat. Ann. § 40:1752 ..................................................................... 26, 27

Mass. Gen. Laws ch. 140, § 128 ............................................................. 26

Mass. Gen. Laws ch. 140, § 131 ............................................................. 26

Mass. Gen. Laws ch. 140, § 131M .......................................................... 26

Mass. Rev. Stat., ch. 134, § 16 (1836) .................................................... 18

Me. Rev. Stat. Ann. tit. 17-A, § 1051 ..................................................... 26

Me. Rev. Stat. Ann. tit. 17-A, § 1052 ................................................ 26, 27

Mich. Comp. Laws § 750.224 .................................................................. 26

Minn. Stat. § 609.67 ................................................................................ 26

Mo. Ann. Stat. § 571.020 ........................................................................ 26

xii

Mo. Ann. Stat. § 571.020(1)(6) ........................................................ 27

N.C. Gen. Stat. § 14-409 ................................................................. 27

N.D. Cent. Code § 62.1-05-01 ......................................................... 27

Neb. Rev. Stat. § 28-1203 ................................................................ 26

Nev. Rev. Stat. § 202.350 ................................................................ 27

N.J. Stat. Ann. § 2C:39-5 ................................................................ 27

N.J. Stat. Ann. § 2C:58-5 ................................................................ 27

N.Y. Penal Law § 265.02 ................................................................. 27

Ohio Rev. Code Ann. § 2923.11 ...................................................... 27

Ohio Rev. Code Ann. § 2923.17 ...................................................... 27

Or. Rev. Stat. § 166.272 ................................................................... 27

Or. Rev. Stat. § 166.272(4) .............................................................. 27

18 Pa. Stat. § 908 ............................................................................. 27

Penal Code, § 7094, 1895 N.D. Rev. Codes 1259 .......................... 21

11 R.I. Gen. Laws § 11-47-8 ........................................................... 27

S.C. Code Ann. § 16-23-230 ............................................................ 27

S.D. Codified Laws § 22-1-2 ........................................................... 27

S.D. Codified Laws § 22-14-6 ......................................................... 27

Tenn. Code Ann. § 39-17-1302 ....................................................... 27

Tex. Penal Code Ann. § 46.05 ......................................................... 27

W. Va. Code § 61-7-9 ...................................................................... 27

Wash. Rev. Code § 9.41.190 .................................................................. 27

Wis. Stat. § 941.26 ................................................................................ 27

2 Edw. 3, c. 3 (1328) (Eng.) ................................................................. 16


**Regulations:**

27 C.F.R. § 479.105 ................................................................................. 3

33 C.F.R. § 232.1(*l*) ............................................................................. 11


**Legislative Materials:**

78 Cong. Rec. 11,400 (1934) ................................................................. 2

132 Cong. Rec. 9600 (1986) ................................................................ 26

H.R. Rep. No. 83-1337 (1954) ............................................................ 26

H.R. Rep. No. 99-495 (1986) .......................................................... 2, 26

*National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*,
    73d Cong. (1934) ....................................................................... 1, 2

S. Rep. No. 73-1444 (1934) .......................................................2, 26, 27

S. Rep. No. 90-1501 (1968) ................................................................ 31


**Other Authorities:**

Act of June 14, 1701, ch. 7, *in* 1 *Laws of New Hampshire 679*
    (Albert Stillman Batchellor ed., 1904) ........................................... 17

Act of Nov. 1, 1692, ch. 18, § 6, *in* 1 *Acts and Resolves of*
    *the Province of Massachusetts Bay* (1869) ....................................... 17

Act of Nov. 27, 1786, ch. 21, *in A Collection of all such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as are now in Force* (1794) .............................. 18

An Act Against Wearing Swords, &c., ch. 9, *in* Aaron Leaming & Jacob Spicer, *Grants, Concessions, and Original Constitutions of the Province of New Jersey* (2d ed. 1881) ................................. 17

John Adams, *Special Message to the Senate and the House* (May 16, 1797) .......................... 37

ATF, *Firearms Commerce in the United States: Annual Statistical Update 2021* ................27-28

4 William Blackstone, *Commentaries on the Laws of England* (10th ed. 1787) .................... 16

1 Richard Burn, *The Justice of the Peace, and Parish Officer* (2d ed. 1756) ...................... 16, 24
*Definition of "Frame or Receiver" and Identification of Firearms,* 87 Fed. Reg. 24,652 (Apr. 26, 2022) ................................................................ 31

John A. Dunlap, *The New-York Justice* (1815) .................................................... 19

John Ellis, *The Social History of the Machine Gun* (1986) ..................................... 1, 22

Joseph Greenleaf, *An Abridgment of Burn's Justice of the Peace and Parish Officer* (1773) ................................................................ 17

1 William Hawkins, *A Treatise of the Pleas of the Crown* (1716) .................................... 16-17

William Waller Hening, *The New Virginia Justice* (1795) .................................... 17

Charles Humphreys, *A Compendium of the Common Law in Force in Kentucky* (1822) ....... 19

William J. Krouse, Cong. Research Serv., RL32842, *Gun Control Legislation* (2012) ................................................................ 27

Eliphalet Ladd, *Burn's Abridgement, Or The American Justice* (2d ed. 1792) (N.H.) .......... 17

Ellis Lewis, *An Abridgment of the Criminal Law of the United States* (1847) ....................... 19

Edgar Stanton Maclay, *A History of American Privateers* (1899) ........................................ 38

George C. Neumann, *Swords and Blades of the American Revolution* (1973) ...................... 15

James Parker, *Conductor Generalis* (1764) ............................................................ 17

James Parker, *Conductor Generalis* (Robert Hodge printing 1788) ...................................... 17

James Parker, *Conductor Generalis* (Robert Campbell printing 1792) .............................. 17

Letter from Thomas Jefferson to William Branch Giles (Jan. 18, 1805) ...................... 37

Letter from Albert Gallatin to Thomas Jefferson (June 7, 1804) .................................. 37

1 William Oldnall Russell, *A Treatise on Crimes and Indictable Misdemeanors* (1831) ......... 19

Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons,*
   *Magazines, and Silencers,*
   83 L. & Contemp. Probs. 231 (2020) ............................................................ 22

Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights,*
   80 L. & Contemp. Probs. 55 (2017) ............................................................ 23

Robert J. Spitzer, *Understanding Gun Law History After Bruen:*
   *Moving Forward by Looking Back,*
   51 Fordham Urb. L.J. 57 (2023) .........................................................19, 20, 21-22, 23

Henry J. Stephen, *Summary of the Criminal Law* (1840) ..................................... 19

U.S. Supreme Court, Order (July 2, 2024),
   https://perma.cc/5TJ6-289A ...................................................................... 13

Georg Friedrich von Martens, *An Essay on Privateers, Captures, and*
   *Particularly on Recaptures* (1801) ............................................................ 38

Francis Wharton, *A Treatise on the Criminal Law of the United States* (1852) .................... 19

3 Bird Wilson, *The Works of the Honourable James Wilson* (1804) ...................................... 19

**STATEMENT OF RELATED APPEALS**
**PURSUANT TO CIRCUIT RULE 28.2(C)(3)**

The government is aware of two other appeals before this Court involving Second Amendment challenges to 18 U.S.C. § 922(o):

- *United States v. Morgan*, No. 24-3141 (10th Cir.)

- *United States v. Shobert*, No. 24-8058 (10th Cir.)

# GLOSSARY

ATF                              Bureau of Alcohol, Tobacco, Explosives and
                                 Firearms

NFA                              National Firearms Act of 1934

## STATEMENT OF JURISDICTION

Plaintiff Jake Stanley DeWilde invoked the jurisdiction of the district court under 28 U.S.C. § 1331. ROA.6. The district court dismissed the complaint for failure to state a claim, entering final judgment on October 16, 2024. *See* ROA.153. DeWilde timely appealed the same day. *See* ROA.154. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether 18 U.S.C. § 922(o) and its implementing regulations comply with the Second Amendment.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

Shortly after World War I, the machinegun entered the civilian market and was soon widely used by criminals. *See* John Ellis, *The Social History of the Machine Gun* 149-77 (1986). Although many States across the nation enacted bans, *see infra* p. 22 n.16, these automatic weapons—which shoot "more than one shot, without manual reloading, by a single function of the trigger," 26 U.S.C. § 5845(b); 18 U.S.C. § 921(a)(24)—brought a crisis "beyond the power of control of merely local authorities," *National Firearms Act: Hearings on H.R. 9066 Before the H. Comm. on Ways & Means*, 73d Cong. 4 (1934) (statement of Attorney General Homer Cummings).

To address the "law violator" and "his most dangerous weapon," S. Rep. No.

73-1444, at 1-2 (1934), the National Firearms Act of 1934 (NFA) required

government approval before machineguns could be made or transferred, enacted a

$200 tax on the making and transfer of machineguns, and required that they be

registered with the federal government. *See* 26 U.S.C. §§ 5801-5802, 5811-5812,

5821-5822, 5841-5842, 5845(a)-(b). In this way, the NFA made it more difficult for

"the criminal class" to obtain the weapons and made it easier to "convict [criminals]

when they have the weapons." *National Firearms Act: Hearings on H.R. 9066 Before the H.*

*Comm. on Ways & Means*, 73d Cong. at 6, 12, 22 (statement of Attorney General

Homer Cummings); *see* 78 Cong. Rec. 11,400 (1934) (statements of Reps. Connery &

Doughton) ("For some time this country has been at the mercy of the gangsters,

racketeers, and professional criminals," and "the primary purpose of the bill is to stop

gangsters from getting hold of machine guns.").

In the next decades, the tax did not change, and by 1986, there was a "need for

more effective protection of law enforcement officers from the proliferation of

machine guns." H.R. Rep. No. 99-495, at 7 (1986). In response, Congress enacted the

federal machinegun ban, 18 U.S.C. § 922(o), which prohibits the sale and possession

of new machineguns. The ban makes it a crime "to transfer or possess a

machinegun," *id.* § 922(o)(1), unless a governmental entity is involved in the transfer

or possession, *see id.* § 922(o)(2)(A), or unless the machinegun was lawfully possessed

before the law's effective date of May 19, 1986, *id.* § 922(o)(2)(B). The Bureau of

2

Alcohol, Tobacco, Firearms and Explosives (ATF) has regulations implementing the ban. *See* 27 C.F.R. § 479.105.

### B.    Procedural History

**1.**  Plaintiff Jake DeWilde, proceeding pro se, brings this facial challenge to 18 U.S.C. § 922(o) and its implementing regulations under the Second Amendment. *See* ROA.6. The sole claim in his amended complaint is that the machinegun ban violates his Second Amendment right to keep and bear arms—specifically, his purported right to have an M-16. *See* ROA.10-11. The M-16 is "a rifle in service with the United States military." *Hollis v. Lynch*, 827 F.3d 436, 440 n.2 (5th Cir. 2016). It is "a selective fire rifle that allows the operator, by rotating a selector switch, to choose semiautomatic or automatic fire." *Staples v. United States*, 511 U.S. 600, 603 (1994). DeWilde alleges that he "desires to own an M16 machinegun for all lawful purposes, including defense of hearth and home and militia functions." ROA.10. He further alleges that he submitted an application to ATF "requesting permission to make an M16 machinegun" but was denied due to the federal machinegun ban. *See* ROA.10.

**2.**  The district court held that the complaint failed to state a claim because the machinegun ban was facially valid and valid as applied to M-16s. The court reasoned that the Second Amendment extends only to "certain types of weapons"—those "in common use." *District of Columbia v. Heller*, 554 U.S. 570, 623, 627 (2008). *See* ROA.147-148. And the court explained that the "number of civilian-owned machineguns"—"less than .2% of total firearms in the United States"—is "too

3

insignificant for machineguns to be considered in common use." ROA.149. In doing

so, the court rejected as irrelevant DeWilde's argument that "[t]he M16 rifle, and its

variants, are the standard small-arms weapons in common use by the United States

military," because those weapons are used by "[s]tanding armies with professional

soldiers," who use weapons that "greatly exceed those of the average citizen"; they are

not "the weapons used by the common citizen." ROA.148 (quotation marks omitted).

Accordingly, the court explained, the ban was constitutional as applied to

machineguns like the M-16.

Moreover, the court explained that the application of the machinegun ban to

M-16s was "consistent with the Nation's historical tradition of firearm regulation,"

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 24 (2022), and "the principles

that underpin our regulatory tradition," *United States v. Rahimi*, 603 U.S. 680, 692

(2024), because there was a "historical tradition of prohibiting the carrying of

'dangerous and unusual weapons,'" *Heller*, 554 U.S. at 627. *See* ROA.150-151. The

court reasoned that machineguns like M-16s are "favored by criminals because they

can overpower other types of firearms," and their "dangerousness hardly needs to be

explained." ROA.151.

The court further determined that, in any event, the machinegun ban could at

least survive DeWilde's facial challenge to the statute and its regulations in their

entirety. The court explained that a facial challenge is just "a claim that the law or

policy at issue is unconstitutional in all its applications," *Bucklew v. Precythe*, 587 U.S.

119, 138 (2019), which can succeed only if the challenger establishes "that no set of circumstances exists under which the Act would be valid," *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). *See* ROA.144. The court concluded that the ban extends to automatic weapons like "an aircraft-mounted cannon," which shows that it is not invalid in all applications. ROA.145-146. Accordingly, the district court entered judgment for the government.[1]

## SUMMARY OF ARGUMENT

The district court properly dismissed DeWilde's challenge to 18 U.S.C. § 922(o) and its implementing regulation. The text, history, and tradition of the Second Amendment all support the federal ban on machineguns.

**I.** The machinegun ban is constitutional as applied to all machineguns, including M-16 rifles. Indeed, the courts of appeals have uniformly rejected challenges to 18 U.S.C. § 922(o). *See, e.g.*, *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (unpublished); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No.: LW001804*, 822 F.3d 136, 143-44 (3d Cir. 2016); *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016); *Hamblen v. United States*, 591

---

[1] In an earlier appeal, this Court held that the district court properly dismissed DeWilde's initial complaint for lack of standing. *See DeWilde v. Attorney Gen. of the U.S.*, No. 23-8054, 2024 WL 1550708 (10th Cir. Apr. 10, 2024) (unpublished). That decision "express[ed] no opinion on the merits of the Second Amendment claim." *Id.* at *1. DeWilde subsequently filed a new case with a new complaint.

F.3d 471, 474 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). That result follows from controlling Supreme Court precedent as well as text, history, and tradition.

**A. 1.** In *United States v. Miller*, 307 U.S. 174 (1939), *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Supreme Court made clear that the Second Amendment does not protect machineguns like M-16s. The Court has recognized a textual and historical limitation on the right that would make it "startling" to think that "the National Firearms Act's restrictions on machineguns . . . might be unconstitutional." *Heller*, 554 U.S. at 624. That limitation is that the right does not extend to "weapons not typically possessed by law-abiding citizens for lawful purposes," such as "dangerous and unusual weapons." *Id.* at 625, 627 (quotation marks omitted). The Court has therefore accepted as uncontroversial that "M-16 rifles and the like—may be banned." *Id.* at 627.

**2.** An independent inquiry into the constitutionality of 18 U.S.C. § 922(o) based on "the Second Amendment's text, as informed by history," and "the Nation's historical tradition of firearm regulation" likewise supports that the machinegun ban is constitutional. *Bruen*, 597 U.S. at 17-19. As the Supreme Court has explained, text, history, and tradition support the "principle[]," *United States v. Rahimi*, 602 U.S. 680, 692 (2024), that a government may ban the possession of "weapons not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625. As

6

explained below, the federal machinegun ban is consistent with that principle because
it bans a firearm that is not typically possessed by law-abiding citizens for lawful
purposes.

**3.** DeWilde's contrary position—that he is entitled to an M-16 because the
military issues M-16s to members of the armed services on active duty—is
unsupported and lacks any limiting principle. The military, the professional standing
army for the United States, is not the militia, the group of private "able-bodied men"
that might be called as a fighting force. *See Heller*, 554 U.S. at 596. And as *Heller* makes
clear, the civilian militia was limited to those weapons "supplied by themselves" and
"in common use" and "used in defense of person and home." *Id.* at 625. It is
irrelevant that machineguns are used by the military because the question whether a
firearm is typically possessed by law-abiding citizens for lawful purposes is an inquiry
into whether a firearm is typically possessed by private citizens for private purposes
like self-defense. *See id.* at 624, 627. There is no authority indicating that the issuance
of a firearm to members of the military on active duty counts for this inquiry, which
concerns the constitutional rights of private people as individuals. And this argument
lacks a reasonable limiting principle: "[I]t is obvious that the Second Amendment
does not protect the right to keep a nuclear weapon in one's basement, or a chemical
or biological weapon[] in one's attic, or a tank in one's backyard." *Nordyke v. King*, 644
F.3d 776, 797 n.6 (9th Cir. 2011) (Gould, J., concurring in part and in the judgment),
*aff'd en banc*, 681 F.3d 1041 (9th Cir. 2012).

**B.** The machinegun ban likewise withstands a facial challenge seeking to invalidate the federal machinegun ban in its entirety. This follows from the conclusion that the machinegun ban is valid "as applied" to the M-16 that DeWilde seeks to possess. *Rahimi*, 602 U.S. at 693. Moreover, as the district court explained, the machinegun ban covers some heavy automatic weapons that fall outside of the Second Amendment because they are not "bearable arms." *Heller*, 554 U.S. at 582. And the ban covers weapons like "aircraft-mounted cannon[s]" that are unquestionably not typically possessed by law-abiding citizens for lawful purposes. ROA.145-146.

## STANDARD OF REVIEW

This Court reviews challenges to the constitutionality of a statute de novo, "with the presumption that the statute is constitutional." *United States v. Lynch*, 881 F.3d 812, 817 (10th Cir. 2018).

## ARGUMENT

## I.    18 U.S.C. § 922(o) complies with the Second Amendment.

The district court correctly rejected DeWilde's challenge to the federal machinegun ban. The courts of appeals have uniformly upheld 18 U.S.C. § 922(o) against Second Amendment challenges. *See, e.g.*, *United States v. Zaleski*, 489 F. App'x 474, 475 (2d Cir. 2012) (unpublished); *United States v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial No. LW001804*, 822 F.3d 136, 143-44 (3d Cir. 2016); *Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016); *Hamblen v.*

8

*United States*, 591 F.3d 471, 474 (6th Cir. 2009); *United States v. Fincher*, 538 F.3d 868, 874 (8th Cir. 2008); *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012). The federal machinegun ban is constitutional as applied to all machineguns, including M-16 rifles, and the ban certainly survives DeWilde's facial challenge. That conclusion follows from controlling precedent as well as text, history, and tradition.

**A.    Section 922(o) is constitutional in all of its applications, including as applied to machineguns like M-16 rifles.**

**1.    Supreme Court precedent bars DeWilde's challenge.**

**a.**  The Supreme Court has made clear that the Second Amendment does not extend to machineguns, including M-16s. The Constitution protects an individual right to keep and bear arms, but "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Among other things, the right does not protect certain "types of weapons." *Id.* at 624. In *United States v. Miller*, 307 U.S. 174 (1939), *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the Court recognized an established limitation on the right to keep and bear arms: the right extends only to weapons "in common use" among civilians, not "weapons not typically possessed by law-abiding citizens for lawful purposes," such as "dangerous and unusual weapons," *Heller*, 554 U.S. at 625, 627 (quotation marks omitted). The Supreme Court first applied this limitation in *Miller*, which upheld convictions for possession of unregistered short-barreled shotguns in violation of the National

Firearms Act. 307 U.S. at 178. *Heller* read *Miller* as holding that that the Second

Amendment "does not protect those weapons not typically possessed by law-abiding

citizens for lawful purposes, such as short-barreled shotguns." *Heller*, 554 U.S. at 625.

For the same reason, the Court explained that it would be "startling" to think that

"the National Firearms Act's restrictions on machineguns . . . might be

unconstitutional," and accepted as uncontroversial that "M-16 rifles and the like—

may be banned." *Id.* at 624, 627.

　　As other courts have recognized, the Supreme Court has therefore recognized

that there is no Second Amendment right to possess machineguns, including M-16s.

*See, e.g.*, *Hollis*, 827 F.3d at 446 ("*Heller* took it as a given that M-16s are dangerous and

unusual weapons and not protected by the Second Amendment."); *Palmetto*, 822 F.3d

at 141 ("[*Heller*] discusses machine guns on several occasions, and each time suggests

that these weapons may be banned without burdening Second Amendment rights.");

*Friedman v. City of Highland Park*, 784 F.3d 406, 408 (7th Cir. 2015) ("*Heller* deemed a

ban on private possession of machine guns to be obviously valid."); *Bevis v. City of*

*Naperville*, 85 F.4th 1175, 1195 (7th Cir. 2023) ("*Heller* itself stated that M16s are not

among the Arms covered by the Second Amendment . . . ."); *Ocean State Tactical, LLC*

*v. Rhode Island*, 95 F.4th 38, 48 (1st Cir. 2024) ("M-16 rifles and the like . . . may be

banned."); *Hanson v. District of Columbia*, 120 F.4th 223, 275 (D.C. Cir. 2024) (Walker,

J., dissenting) ("[T]he Supreme Court has said Congress could ban machine guns

without violating the Second Amendment . . . ."); *Heller v. District of Columbia* (*Heller II*),

670 F.3d 1244, 1288 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("[A]s the Court stated . . . automatic 'M-16 rifles and the like' . . . have been permissibly banned by Congress."). That limitation, repeatedly recognized in the Supreme Court's decisions, controls this case.

Where, as here, the limitations recognized by the Supreme Court dictate the outcome of Second Amendment challenges to federal firearms laws, this Court has ended the analysis. *See Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1124 (10th Cir. 2015) (explaining that such limitations are dispositive whether the language is "dicta" or instead "informs the holding in that case"). The Court, for example, has upheld the federal ban on the possession of firearms by felons, 18 U.S.C. § 922(g)(1), based on language in *Heller* that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," 554 U.S. at 626; *see United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009). The Court has likewise upheld federal regulations prohibiting the storage and carriage of firearms on federal property, 39 C.F.R. § 232.1(*l*), based on language in *Heller* endorsing "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings," 554 U.S. at 626; *see Bonidy*, 790 F.3d at 1124. The same approach is warranted with respect to the federal machinegun ban here.

    **b.**  DeWilde's opening brief does not reference the Supreme Court's recognition that M-16 rifles "may be banned," *Heller*, 554 U.S. at 627, and offers no basis on which to ignore that limitation. DeWilde asserts that it is not appropriate to

11

rely on these "comments in *Heller*." Br. 18 (quotation marks omitted). Even assuming DeWilde is correct that these statements are dicta, they remain instructions that the courts of appeals must follow. The courts of appeals are "bound by Supreme Court dicta almost as firmly as by the Courts' outright holdings, particularly when the dicta is recent and not enfeebled by later statements." *Bonidy*, 790 F.3d at 1125 (quoting *United States v. Serawop*, 505 F.3d 1112, 1122 (10th Cir. 2007)). As this Court has stressed, the Supreme Court's "dicta is almost as influential . . . as its holdings," *United States v. Nixon*, 919 F.3d 1265, 1273 (10th Cir. 2019), for the same reason that "rigid adherence to vertical stare decisis is paramount": "[o]nly the Supreme Court can overrule its . . . precedents," *United States v. Maloid*, 71 F.4th 795, 808 (10th Cir. 2023).

DeWilde suggests that the Supreme Court's instructions should not be followed because *Heller* "predates the historical analysis mandated in *Bruen*." Br. 17 (quotation marks omitted). But *Heller* applied the same historical analysis, and *Bruen* did not abrogate any part of the Court's opinion in *Heller*. To the contrary, *Bruen* explained that its articulation of the governing standard was "[i]n keeping with *Heller*," which relied on text and the "historical understanding of the [Second] Amendment to demark the limits on the exercise of that right." *Bruen*, 597 U.S. at 17, 21. DeWilde further argues that the instructions run counter to the "essential analysis in *Heller*" that the Second Amendment applies to arms that did not exist at the country's founding. Br. 17-18 (quotation marks omitted). But that is a *non sequitur*—whether or not machineguns existed at the founding, the Supreme Court made clear that "automatic

'M-16 rifles and the like' are not in common use and have been permissibly banned by

Congress." *Heller v. District of Columbia (Heller II)*, 670 F.3d 1244, 1288 (D.C. Cir. 2011)

(Kavanaugh, J., dissenting). That limitation forecloses DeWilde's challenge here.[2]

### 2.    The text, history, and tradition of the Second Amendment make clear that 18 U.S.C. § 922(o) is constitutional.

Were this Court to undertake further inquiry into the constitutionality of

18 U.S.C. § 922(o), "the Second Amendment's text, as informed by history," and the

"Nation's historical tradition of firearm regulation" support that the machinegun ban

is permissible. *Bruen*, 597 U.S. at 17, 19. There is no need to perform an independent

inquiry to derive any principle here, because the Supreme Court has already held that

the text, history, and tradition of the Second Amendment supports a "principle[],"

*Rahimi*, 602 U.S. at 692, that the government may ban the possession of "weapons not

typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at

625; *Miller*, 307 U.S. at 179.[3] But if this Court is inclined to do so, that principle is well

---

[2] DeWilde briefly suggests (at 20) that the Supreme Court indicated that it does not want the courts of appeals to rely on these statements in *Heller* because it vacated and remanded *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023), in which this Court upheld 18 U.S.C. 922(g)(1) based on statements in *Heller*. That is incorrect. After *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court vacated and remanded all pending petitions for certiorari concerning the constitutionality of Section 922(g)(1) "for further consideration" in light of *Rahimi*. *See* U.S. Supreme Court, Order 2-4, 6-8 (July 2, 2024), https://perma.cc/5TJ6-289A.

[3] DeWilde briefly asserts (at 21) that *Heller* qualified this limitation because it stated, "there will be time enough to expound upon the historical justifications for the exceptions we have mentioned." 554 U.S. at 635. That statement refers to other

*Continued on next page.*

supported, as explained below. Section 922(o) is consistent with that principle because it bans a firearm that is not typically possessed by law-abiding citizens for lawful purposes like self-defense.

**a.    The government may ban the possession of weapons not typically possessed by law-abiding citizens for lawful purposes.**

**i.**  The text of the Second Amendment and its historical context underscore that firearms are unprotected arms if they are not typically possessed by law-abiding citizens for lawful purposes. The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The text supports that "the way in which the Second Amendment's operative clause furthers the purpose announced in its preface" is that it only protects only those weapons that "men were expected to . . . bear[]" when "called for [militia] service." *Heller*, 554 U.S. at 624-25 (last alteration in original). These were "arms supplied by themselves" and "of the kind in common use" at the time "for lawful purposes like self-defense," rather than "weapons not typically possessed by law-abiding citizens for lawful purposes." *Id.*; *see Bevis*, 85 F.4th

---

exceptions outlined in the opinion. *Heller* made clear that the limitations on the "sorts of weapons protected" were "fairly supported by the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons.'" *Id.* at 627. The court cited multiple historical sources that embodied that tradition. *See id.* The Court continues to adhere to this principle. *See, e.g.*, *Bruen*, 597 U.S. at 81 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that the limitation is "fairly supported by the historical tradition of prohibiting the carrying of dangerous and unusual weapons").

at 1193 ("We take from this that the definition of 'bearable Arms' extends only to weapons in common use for a lawful purpose.").

That principle conforms to the public understanding of the text at the time. Like the text of other amendments, the "inquiry into the scope of the right" includes "constitutional text and history." *Rahimi*, 602 U.S. at 691; *see id.* at 723 (Kavanaugh, J., concurring) ("[P]re-ratification laws, practices, and understandings—can inform interpretation of vague constitutional provisions . . . ."). As is well established, the "historical sources indicate that the Arms the Second Amendment is talking about are weapons in common use for self-defense." *Bevis*, 85 F.4th at 1192. The public understood the text not to protect certain "types of weapons." *Heller*, 554 U.S. at 624. In the "colonial and revolutionary war era," the weapons protected were just those "used in defense of person and home," *id.* at 624-25 (citing George C. Neumann, *Swords and Blades of the American Revolution* 6-15, 252-254 (1973)), which again, excluded weapons "not typically possessed by law-abiding citizens for lawful purposes," *id.* at 625.

**ii.** The "historical tradition of firearm regulation" in the United States further supports that a government may ban the possession of firearms that are not typically possessed by law-abiding citizens for lawful purposes. *Bruen*, 597 U.S. at 24. The law is not "trapped in amber." *Rahimi*, 602 U.S. at 691. The government may justify a firearms law when "historical precedent" from "before, during, and even after the founding evinces a comparable tradition of regulation," *Bruen*, 597 U.S. at 27, such

that "the challenged regulation is consistent with the principles that underpin our regulatory tradition," *Rahimi*, 602 U.S. at 692. As established in *Heller* and reaffirmed in *Bruen* and *Rahimi*, there is a longstanding historical tradition in this country of banning "dangerous and unusual weapons." *Heller*, 554 U.S. at 627 (quotation marks omitted); *Bruen*, 597 U.S. at 47; *Rahimi*, 602 U.S. at 691. That tradition "fairly support[s]" bans on firearms not "in common use," meaning firearms "not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, 627.

**Pre-Founding**:  Because the Second Amendment "codified a right inherited from our English ancestors," English legal tradition sheds light on our traditions. *Bruen*, 597 U.S. at 20 (quoting *Heller*, 554 U.S. at 599). In 1328, the Statute of Northampton made the offense of "rid[ing]" or "go[ing] . . . armed" punishable by forfeiture of the offender's "[a]rmour." 2 Edw. 3, c. 3 (1328) (Eng.); *see Bruen*, 597 U.S. at 41-45. This statute was understood by commentators to provide that "[t]he offence of riding or going armed, with dangerous or unusual weapons, is a crime against the public peace, by terrifying the good people of the land." 4 William Blackstone, *Commentaries on the Laws of England* 148-49 (10th ed. 1787). In this way, the statute was consistent with the common law offense of "affray," which included cases "where a man arms himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people." 1 Richard Burn, *The Justice of the Peace, and Parish Officer* 13-14 (2d ed. 1756); 1 William Hawkins, *A Treatise of the Pleas of the Crown* 135

(1716). The statute passed to the colonies, *Patterson v. Winn*, 30 U.S. (5 Pet.) 233, 241 (1831), and served as a model for later regulation, *see Bruen*, 597 U.S. at 46-47.

**Founding**: The colonies likewise "prohibited the carrying of 'dangerous and unusual weapons.'" *Bruen*, 597 U.S. at 47; *see Heller*, 554 U.S. at 627; *Rahimi*, 602 U.S. at 691. The province of East New Jersey (1686) prohibited the concealed carry of "unusual and unlawful weapons."[4] More generally, early American justice-of-the-peace manuals empowered justices to confiscate the arms of a person who "arm[ed] himself with dangerous and unusual weapons, in such a manner as will naturally cause a terror to the people."[5] Recodifying this authority, colonial Massachusetts (1692) and New Hampshire (1701) provided that justices of the peace could arrest "all affrayers, rioters, disturbers or breakers of the peace, and such as shall ride, or go armed offensively . . . by night or by day, in fear or affray of their majesties' liege people."[6] In the late-18th century, the state of Virginia (1786) similarly provided that no person

---

[4] An Act Against Wearing Swords, &c., ch. 9, *in* Aaron Leaming & Jacob Spicer, *Grants, Concessions, and Original Constitutions of the Province of New Jersey* 289-90 (2d ed. 1881).

[5] Joseph Greenleaf, *An Abridgment of Burn's Justice of the Peace and Parish Officer*, 12-13 (1773) (Mass.); William Waller Hening, *The New Virginia Justice* 18 (1795) (Va.); Eliphalet Ladd, *Burn's Abridgement, Or The American Justice* 22- 24 (2d ed. 1792) (N.H.); James Parker, *Conductor Generalis* 12 (1764) (N.J.); James Parker, *Conductor Generalis* 12 (Robert Hodge printing 1788) (N.Y.); James Parker, *Conductor Generalis* 11 (Robert Campbell printing 1792) (Pa.).

[6] *See* Act of Nov. 1, 1692, ch. 18, § 6, *in* 1 *Acts and Resolves of the Province of Massachusetts Bay* 52-53 (1869); Act of June 14, 1701, ch. 7, *in* 1 *Laws of New Hampshire 679* (Albert Stillman Batchellor ed., 1904).

17

shall "ride armed by night nor by day, . . . in terror of the Country,"[7] and the commonwealth of Massachusetts (1795) later again directed justices of the peace to arrest "all affrayers, rioters, disturbers, or breakers of the peace, and such as shall ride or go armed offensively, to the fear or terror of the good citizens of this Commonwealth."[8] These statutes contemplated that it would naturally constitute affray to carry dangerous and unusual weapons, *see Bruen*, 597 U.S. at 46-47.

In addition, the colonies enacted "surety laws" that "targeted the misuse of firearms." *Rahimi*, 602 U.S. at 696. Among other things, these laws permitted justices of the peace to "arrest" all who "go armed offensively [and] require of the offender to find sureties for his keeping the peace." *Id.* (alteration in original) (quotation marks omitted). And these laws authorized the imposition of bonds from individuals" if they went "armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon." *Id.* (quoting Mass. Rev. Stat., ch. 134, § 16 (1836)). At least 10 jurisdictions had versions of this particular provision. *See Bruen*, 597 U.S. at 56 & n.23 (collecting sources).

**Post-Founding**: Consistent with this regulatory tradition, States regularly banned various dangerous and unusual weapons through the antebellum period and during reconstruction. *See Rahimi*, 602 U.S. at 728 (Kavanaugh, J., concurring) ("The

---

[7] Act of Nov. 27, 1786, ch. 21, *in A Collection of all such Acts of the General Assembly of Virginia, of a Public and Permanent Nature, as are now in Force* 33 (1794).
[8] Act of Jan. 29, 1795, ch. 2, 1795 Mass. Acts 436.

Court has repeatedly employed post-ratification history to determine the meaning of vague constitutional text."). States continued to punish affray under the understanding that "[r]iding or going armed with dangerous or unusual weapons, is a crime against the public peace, by terrifying the people of the land." Charles Humphreys, *A Compendium of the Common Law in Force in Kentucky* 482 (1822); John A. Dunlap, *The New-York Justice* 8 (1815) (reiterating that "at common law, for a man to arm himself with dangerous and unusual weapons, in such manner as will naturally cause terror to the people" was affray); *see Heller*, 554 U.S. at 627 (collecting sources).[9]

And at a time when a firearm typically could not fire more than a single shot, States banned other dangerous and unusual weapons not designed for lawful use. States banned certain knives—most notably, the bowie knife, a knife with a distinctive hand guard that had a large fixed blade that was sharp on one side. Robert J. Spitzer, *Understanding Gun Law History After Bruen: Moving Forward by Looking Back*, 51 Fordham Urb. L.J. 57, 88-94 (2023). Georgia (1837) provided that no one shall "keep, or have

---

[9] 3 Bird Wilson, *The Works of the Honourable James Wilson* 79 (1804); 1 William Oldnall Russell, *A Treatise on Crimes and Indictable Misdemeanors* 271-72 (1831); Henry J. Stephen, *Summary of the Criminal Law* 48 (1840); Ellis Lewis, *An Abridgment of the Criminal Law of the United States* 64 (1847); Francis Wharton, *A Treatise on the Criminal Law of the United States* 726 (1852); *State v. Langford*, 10 N.C. 381, 383-84 (1824); *O'Neill v. State*, 16 Ala. 65, 67 (1849); *English v. State*, 35 Tex. 473, 476 (1871); *State v. Lanier*, 71 N.C. 288, 289 (1874).

about or on their person or elsewhere . . . Bowie, or any other kind of knives,"[10] and

others banned the possession, sale, carry, or concealed carry of like knives.[11]

     States also banned blunt weapons like "slung shots," brass knuckles, and billy

clubs. *Understanding Gun Law History After Bruen*, *supra*, at 95-98. The "slung shot," for

example, was "a hand-held weapon for striking that has a piece of metal or stone at

one end attached to a flexible strap or handle." *Id.* at 97. Because it was associated

with crime, New York (1849) made it a felony to "be found in the possession of . . .

any instrument or weapon of the kind usually known as a slung shot." *See* Act of

---

[10] Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90.

[11] <u>Knives</u>: *See, e.g.*, Act of Dec. 25, 1837, § 1, 1837 Ga. Laws 90; Act of Jan. 27, 1838, ch. 137, § 1, 1838 Tenn. Pub. Acts 200; Act of Feb. 2, 1838, ch. 101, § 1, 1838 Va. Acts 76; Act of Jan. 6, 1841, Penal Code, ch. 7, § 4, 1840 Ala. Laws 148-49; Act of Mar. 14, 1855, No. 120, § 115, 1855 La. Acts 148; Act of Feb. 23, 1859, ch. 78, § 1, 1859 Ind. Laws 129; Act of Mar. 18, 1859, § 1, 1859 Ohio Laws 56-57; Act of Mar. 1, 1864, ch. 128, § 1, 1864 Cal. Stat. 115; Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25; Act of Feb. 15, 1872, ch. 7, § 1, 1872 Wis. Laws 17; Act of Mar. 4, 1873, ch. 58, pt. 1, ch. 4, § 25, 1873 Neb. Laws 724; Act of Dec. 27, 1873, ch. 226, § 168, 1873 W. Va. Acts 709; Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57; Act of Feb. 28, 1878, ch. 46, §1, 1878 Miss. Laws 175; Act of Mar. 5, 1879, ch. 127, § 1, 1879 N.C. Laws 231; Act of May 24, 1879, §1, 1879 Ill. Laws 114–15; Act of Dec. 24, 1880, No. 362, § 1, 1880 S.C. Acts 447–48; Act of Feb. 1, 1881, § 1, 1881 Colo. Laws 74; Act of Apr. 1, 1881, ch. 96, § 1, 1881 Ark. Acts 191-92; Act of April 16, 1881, § 4, 1881 Ill. Laws 74; Act of Mar. 6, 1882, ch. 219, § 1, 1881 Va. Acts 233; Act of Mar. 29, 1882, ch. 135, § 1, 1882 W. Va. Acts 421; Act of Feb. 18, 1885, § 1, 1885 Or. Laws 33; Act of Apr. 7, 1886, ch. 375, § 1, 1886 Md. Laws 602; Act of May 31, 1887, No. 129, §1, 1887 Mich. Pub. Acts 144; Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231–32; Act of June 2, 1893, ch. 4124, § 1, 1893 Fla. Laws 52.

Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404. States banned the possession, sale,

carry, and concealed carry of other similar melee weapons as well.[12]

As firearms became more capable, States banned certain firearms as dangerous

and unusual weapons too. Consistent with a colonial New Jersey (1771) statute that

made it a crime to "set any loaded Gun . . . intended to go off or discharge itself, or

be discharged by any String, Rope, or other Contrivance,"[13] various States

criminalized the "setting of a so-called trap or spring gun, rifle, or other deadly

weapon."[14] As single-shot pistols became multi-shot handguns, and silencers came

into use, States banned silencers as well.[15] *See Understanding Gun Law History After*

---

[12] <u>Melee Weapons</u>: *See, e.g.*, Act of Apr. 7, 1849, ch. 278, § 2, 1849 N.Y. Laws 404; Act of Nov. 12, 1849, No. 36, § 2, 1849 Vt. Acts 26; Act of Aug. 6, 1868, No. 13, ch. 7, § 11, 1868 Fla. Laws 95; Act of Apr. 12, 1871, ch. 34, § 1, 1871 Tex. Gen. Laws 25; Act of Feb. 16, 1875, § 1, 1875 Ark. Acts 156-57; Act of Apr. 16, 1881, §1, 1881 Ill. Laws 73; Act of Mar. 24, 1882, ch. 135, § 1, 1882 W. Va. Acts 421; Act of May 3, 1893, ch. 1180, § 1, 1893 R.I. Pub. Laws 231–32.

[13] Act of December 21, 1771, ch. 539, § 10, 1771 N.J. Laws 346.

[14] <u>Trap Guns</u>: *See, e.g.*, Act of Mar. 6, 1852, § 103, 1851 Utah Laws 137; Act of Feb. 25, 1869, ch. 33, § 1, 1869 Wis. Laws 35; Act of Feb. 27, 1869, ch. 39, § 1, 1869 Minn. Laws 50-51; Act of Apr. 22, 1875, No. 97, § 1, 1875 Mich. Pub. Acts 136; Act of Nov. 25, 1884, No. 76, § 1, 1884 Vt. Acts. 74-75; Penal Code, § 7094, 1895 N.D. Rev. Codes 1259; Act of Mar. 8, 1909, ch. 240, § 22, 1909 S.D. Laws 450; Act of Mar. 22, 1909, ch. 249, § 266, 1909 Wash. Laws 973; Act of Feb. 14, 1913, No. 201, § 16, 1912 Vt. Acts 260-61; Act of Apr. 1, 1913, ch. 186, § 1, 1913 N.J. Laws 339; Act of Apr. 21, 1915, ch. 133, § 17, 1915 N.H. Laws 180-81; Act of July 7, 1921, ch. 530, § 1, 1921 Wis. Laws 870; Act of Feb. 11, 1925, ch. 31, § 1, 1925 Or. Laws 42; Act of Feb. 25, 1931, No. 58, § 1, 1931 S.C. Acts 78; Act of June 16, 1931, No. 328, § 236, 1931 Mich. Pub. Acts 671; *see* Act of May 25, 1911, ch. 195, § 1, 1911 N.Y. Laws 442.

[15] <u>Silencers</u>: *See, e.g.*, Act of Mar. 24, 1909, ch. 129, § 1, 1909 Me. Laws 141-42; Act of Nov. 14, 1912, No. 237, § 1, 1912 Vt. Acts 310; Act of Mar. 13, 1913, ch. 64, § 1, 1913 Minn. Laws 55; Act of Apr. 16, 1926, ch. 261, 1926 Mass. Acts 256; Act of

*Continued on next page.*

*Bruen*, *supra*, at 72-82; Robert J. Spitzer, *Gun Accessories and the Second Amendment: Assault Weapons, Magazines, and Silencers*, 83 L. & Contemp. Probs. 231, 245-49 (2020).

Indeed, when machineguns became a "general societal problem" after World War I, many States banned them quickly without genuine "disputes regarding the lawfulness of such prohibitions." *Bruen*, 597 U.S. at 26, 30. As explained, the machinegun migrated from the battlefield to the civilian market following the war and immediately caused a national crisis as criminals overpowered law enforcement officials with firearms like the Thompson submachine gun (or "Tommy Gun"). *See* John Ellis, *The Social History of the Machine Gun* 149-77 (1986). Shortly thereafter, States across the nation passed anti-machinegun laws, including bans.[16]

---

Apr. 27, 1927, ch. 1052, § 8, 1927 R.I. Pub. Laws 259; Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888; Act of Jan. 9, 1934, Act 36, § 7, 1933 Haw. Laws 38-39; *see* Act of Apr. 6, 1916, ch. 137, § 1, 1916 N.Y. Laws 338-39; *see also* Act of Apr. 7, 1911, ch. 128, § 1, 1911 N.J. Laws 185; Act of July 3, 1918, No. 88, § 3, 1918 La. Acts 131; Act of Feb. 18, 1921, ch. 83, § 97, 1921 Wyo. Sess. Laws 112-13; Act of May 24, 1923, No. 228, Art. VII, § 704(a), 1923 Pa. Laws 386; Act of Mar. 7, 1925, ch. 460, § 4, 1925 N.C. Laws 530; Act of Mar. 29, 1927, ch. 169, 1927 Del. Laws 516; Act of Mar. 18, 1929, ch. 84, § 14, 1929 Ariz. Laws 247.

[16] Machineguns: Act of June 5, 1925, ch. 3, 1925 W. Va. Acts 24-32; Act of May 16, 1927, ch. 552, § 1, 1927 Cal. Stat. 938; Act of Mar. 19, 1927, ch. 95, § 2, 1927 N.J. Laws 181; Act of Mar. 9, 1927, ch. 156, § 1, 1927 Ind. Acts 469; Act of Apr. 19, 1927, ch. 234, § 1, 1927 Iowa Acts 201; Act of Apr. 22, 1927, ch. 1052, § 4, 1927 R.I. Pub. Laws 257; Act of Apr. 27, 1927, ch. 326, § 1, 1927 Mass. Acts 413-14; Act of June 2, 1927, No. 372, § 3, 1927 Mich. Pub. Acts 888-89; Act of May 28, 1929, ch. 132, § 1, 1929 Wis. Laws 157; Act of Apr. 25, 1929, No. 329, § 2, 1929 Pa. Laws 777; Act of Apr. 29, 1929, ch. 190, § 1, 1929 Neb. Laws 674; Act of June 1, 1929, H.R. 498, § 1, 1929 Mo. Laws 170; Act of Feb. 25, 1931, ch. 249, § 1, 1931 Del. Laws 813; Act of Mar. 9, 1931, ch. 178, § 2, 1931 N.D. Laws 306; Act of Apr. 15, 1931, ch. 435, § 1, 1931 N.Y. Laws 1033; Act of July 2, 1931, § 2, 1931 Ill. Laws 452; Act of July 7, 1932,

*Continued on next page.*

*See Understanding Gun Law History After Bruen*, *supra*, at 61-67; Robert J. Spitzer, *Gun Law History in the United States and Second Amendment Rights*, 80 L. & Contemp. Probs. 55, 67-68 (2017). This historical tradition supports a principle that the government may ban "weapons not typically possessed by law-abiding citizens for lawful purposes," such as dangerous and unusual weapons. *Heller*, 554 U.S. at 625, 627.

**iii.** DeWilde argues that this historical evidence only reflects restrictions on "the manner in which machineguns are carried or displayed." Br. 22 (quotation marks omitted). The Supreme Court has rejected this view, making clear that "[s]ome jurisdictions banned the carrying of 'dangerous and unusual weapons.'" *Rahimi*, 602 U.S. at 691. In arguing otherwise, DeWilde relies on a sentence in *Bruen* where the Court explained that the certain affray statutes like the Statute of Northampton did not "ban[] the carrying of any class of firearms" and instead "codified the existing common-law offense of bearing arms to terrorize the people." *Bruen*, 597 U.S. at 47. That observation simply explained that early statutes did not "ban[] the public carry of all firearms," in a case that addressed the question whether there was any right to publicly carry a firearm at all. *Id.* Immediately thereafter, the Supreme Court made

---

No. 80, § 2, 1932 La. Acts 337; Act of Feb. 28, 1933, ch. 206, §§ 1-5, 1933 S.D. Laws 245; Act of Mar. 6, 1933, ch. 64, § 1, 1933 Wash. Laws 335; Act of Mar. 10, 1933, ch. 315, § 3, 1933 Or. Laws 489; Act of Apr. 8, 1933, No. 64, 1933 Ohio Laws 189; Act of Apr. 10, 1933, ch. 190, § 3, 1933 Minn. Laws 233; Act of Apr. 27, 1933, No. 120, § 2, 1933 Haw. Laws 117; Act of Oct. 25, 1933, ch. 82, §§ 2-3, 1933 Tex. Laws 219; Act of Nov. 28, 1933, ch. 62, § 1, 1933 Kan. Laws 76; Act of Mar. 2, 1934, No. 731, §§ 2-4, 1934 S.C. Acts 1288; Act of Mar. 7, 1934, ch. 96, §§ 2-5, 1934 Va. Acts 137.

clear that "colonial legislatures sometimes prohibited the carrying of 'dangerous and unusual weapons,'" citing the relevant passage from *Heller. Id. Heller*, in turn, made clear that "the historical tradition of prohibiting the carrying of 'dangerous and unusual weapons'" "fairly support[s]" a tradition of bans on firearms not "in common use," meaning firearms "not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625, 627 (quotation marks omitted); *see id.* at 625 (explaining that the limitation "accords with the historical understanding of the scope of the right").

In any event, even if some statutes only restricted the manner of carrying dangerous and unusual weapons, DeWilde does not explain why those statutes would not support a principle that the government may ban the possession of weapons not typically possessed by law-abiding citizens for lawful purposes. "[A]nalogical reasoning under the Second Amendment" is not a "regulatory straightjacket," and there is no need to identify a "historical twin," *Bruen*, 597 U.S. at 30 (emphasis omitted), because "[h]istorical regulations reveal a principle, not a mold," *Rahimi*, 602 U.S. at 740 (Barrett, J. concurring). There is no reason why restrictions on the manner of carrying firearms for unlawful purposes—*i.e.*, to terrorize the people—cannot fairly support prohibitions on the possession of firearms not typically possessed for lawful purposes—*i.e.*, "dangerous and unusual" firearms that would "naturally" terrorize the people, 1 Richard Burn, *The Justice of the Peace, and Parish Officer* 13-14 (2d ed. 1756). In *Rahimi* itself, the Court explained that such conduct "disrupted the 'public order' and

'le[d] almost necessarily to actual violence.'" *Rahimi*, 602 U.S. at 697 (alteration in original). And it held that these laws amply support "the disarmament of individuals who pose a credible threat to the physical safety of others," upholding a law in 18 U.S.C. § 922(g)(8) that "bars an individual from possessing a firearm." *Id.* at 693. These sources also support the disarmament of an individual from having a dangerous and unusual weapon not typically possessed by law-abiding citizens for lawful purposes.[17]

> **b.    Section 922(o) bans the possession of weapons not typically possessed by law-abiding citizens for lawful purposes: machineguns.**

**i.** The federal machinegun ban is consistent with the principle underlying our regulatory tradition permitting governments to ban firearms that are not typically possessed by law-abiding citizens for lawful purposes. Machineguns are not typically

---

[17] These historical sources may also support other "principles that underpin our regulatory tradition." *Rahimi*, 602 U.S. at 692. The Supreme Court has clearly explained why these sources support a principle that the government may ban the possession of "weapons not typically possessed by law-abiding citizens for lawful purposes," *Heller*, 554 U.S. at 625; *Miller*, 307 U.S. at 179, and it is enough to say that the federal machinegun ban is consistent with that principle. But the historical materials may also permit the government to ban "weapons and accessories designed for military or law-enforcement use," *Bevis*, 85 F.4th at 1202, or "military-style weapons designed for sustained combat operations that are ill-suited and disproportionate to the need for self-defense," *Bianchi v. Brown*, 111 F.4th 438, 441 (4th Cir. 2024) (en banc). Or it may permit the government to ban weapons "more dangerous, and no more useful for self-defense, than a normal handgun or rifle," *Ocean State Tactical, LLC v. Rhode Island*, 95 F.4th 38, 48 (1st Cir. 2024), or "weapons that are particularly capable of unprecedented lethality," *Hanson v. D.C.*, 120 F.4th 223, 238 (D.C. Cir. 2024). This Court may leave those questions open for another day.

possessed by law-abiding citizens for lawful purposes. As Congress has long

determined, "there is no reason why anyone except a law officer should have a

machine gun." S. Rep. No. 73-1444, at 2 (1934). The machinegun ban is "designed to

deal with crime guns." 132 Cong. Rec. 9600 (1986) (statement of Sen. Hatch).

Machineguns are used by "law violator[s]," S. Rep. No. 73-1444, at 1 (1934); they are

"used readily and efficiently by criminals or gangsters," H.R. Rep. No. 83-1337, at

A395 (1954); they are "used by racketeers and drug traffickers for intimidation,

murder and protection of drugs and the proceeds of crime," H.R. Rep. No. 99-495, at

4 (1986); and their "proliferation" undermines "protection of law enforcement

officers," *id.* at 7. Given that, the Supreme Court has described them as "quasi-

suspect" weapons, *Staples v. United States*, 511 U.S. 600, 611-12 (1994), "likely to be

used for criminal purposes," *United States v. Thompson/Center Arms Co.*, 504 U.S. 505,

517 (1992) (plurality opinion). As such, they are banned or regulated under federal law

for private persons, *see* 26 U.S.C. § 5845(a)-(b). Beyond that, 35 states and the District

of Columbia have banned them for private persons as well.[18] That uniform judgment

is enough to resolve this case.

---

[18] *See* Alaska Stat. § 11.61.200; Ariz. Rev. Stat. Ann. §§ 13-3101, 13-3102; Cal.
Penal Code § 32625; Colo. Rev. Stat. § 18-12-102; Del. Code tit. 11, § 1444; D.C.
Code § 22-4514; Fla. Stat. § 790.221; Ga. Code Ann. § 16-11-122; Haw. Rev. Stat.
§ 134-8; 720 Ill. Comp. Stat. 5/24-1; Ind. Code § 35-47-5-8; Iowa Code §§ 724.1,
724.3; Kan. Stat. Ann. § 21-6301; La. Stat. Ann. § 40:1752; Me. Rev. Stat. Ann. tit.
17-A, § 1051; Mass. Gen. Laws ch. 140, §§ 128, 131, 131M; Mich. Comp. Laws
§ 750.224; Minn. Stat. § 609.67; Mo. Ann. Stat. § 571.020; Neb. Rev. Stat. § 28-1203;

*Continued on next page.*

That machineguns are a "law violator['s] . . . most dangerous weapon" further supports that they are not protected. S. Rep. No. 73-1444, at 1 (1934). Machineguns are "favored by criminals because they can overpower other types of firearms," and their "dangerousness hardly needs to be explained." ROA.151. "The immense danger posed by machineguns" is clear. *United States v. O'Brien*, 560 U.S. 218, 230 (2010). As automatic weapons, they can "fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds." *Henry*, 688 F.3d at 640. This "heightened capability to cause damage" supports that they are not possessed for lawful use. *United States v. Cox*, 906 F.3d 1170, 1185 (10th Cir. 2018) (quotation marks omitted).

And the actual possession of machineguns by private civilians confirms that they are not typically possessed for lawful use. Out of the hundreds of millions of firearms in the United States, *see, e.g.*, William J. Krouse, Cong. Research Serv., RL32842, *Gun Control Legislation* 8 (2012), there are only 741,146 registered machineguns, *see* ATF, *Firearms Commerce in the United States: Annual Statistical Update*

---

Nev. Rev. Stat. § 202.350; N.J. Stat. Ann. §§ 2C:39-5, 2C:58-5; N.Y. Penal Law § 265.02; N.C. Gen. Stat. § 14-409; N.D. Cent. Code § 62.1-05-01; Ohio Rev. Code Ann. §§ 2923.11, 2923.17; Or. Rev. Stat. § 166.272; 18 Pa. Stat. § 908; 11 R.I. Gen. Laws § 11-47-8; S.C. Code Ann. § 16-23-230; S.D. Codified Laws §§ 22-1-2, 22-14-6; Tenn. Code Ann. § 39-17-1302; Tex. Penal Code Ann. § 46.05; Wash. Rev. Code § 9.41.190; W. Va. Code § 61-7-9; Wis. Stat. § 941.26. Some, but not all, of these state laws have exceptions or affirmative defenses for machineguns possessed in compliance with federal law. *See, e.g.*, Ga. Code Ann. § 16-11-122; La. Stat. § 40:1752; Me. Rev. Stat. Ann. tit. 17-A, § 1052; Mo. Ann. Stat. § 571.020(1)(6); Or. Rev. Stat. § 166.272(4).

27

*2021*, at 15-16.[19] When machineguns involving the government are excluded (such as

machineguns possessed by law enforcement), *see* 18 U.S.C. § 922(o)(2)(A), the number

is no greater than 175,977, *see Hollis*, 827 F.3d at 449. And with the ban on new

machineguns, that number can only decrease over time. As the district court

explained, this "number of civilian-owned machineguns" is "insignificant." ROA.149

(quotation marks omitted). Far less than one percent of all firearms, there can be no

doubt that machineguns "are highly unusual in society at large," *Bruen*, 597 U.S. at 47

(quotation marks omitted), and that it would be highly unusual to possess a

machinegun for self-defense.

      **ii.** DeWilde has no argument against the reality that machineguns are not

typically possessed by lawful citizens for lawful purposes and makes no argument that

machineguns are not dangerous and unusual. *See Reedy v. Werholtz*, 660 F.3d 1270,

1274 (10th Cir. 2011) ("The general rule in this circuit is that a party waives issues and

arguments raised for the first time in a reply brief." (alteration and quotation marks

omitted)). Instead, DeWilde simply repeats his argument that Section 922(o) is

unconstitutional because it "criminalizes the mere possession of such weapons" rather

than "the manner in which machineguns are carried or displayed." Br. 22 (quotation

marks omitted). Again, the Supreme Court takes a different approach: these weapons

may be banned altogether because "the Second Amendment does not protect those

---

      [19] Available at https://perma.cc/5FBE-2C9C.

weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. And the Court has upheld disarmament laws that criminalize possession. *See Rahimi*, 602 U.S. at 685-86 (upholding 18 U.S.C. § 922(g)(8)). That result is appropriate for here because the federal machinegun ban is constitutional.

### 3. DeWilde's arguments specific to M-16s lack merit.

**a.** In arguing that 18 U.S.C. § 922(o) unconstitutionally bans M-16s, DeWilde contends (at 17) that the district court did not adhere to the governing standard because it conducted a "textual analysis" of the Second Amendment using historical authorities. That methodological objection has no consequence for this appeal because the text, history, and tradition of the Second Amendment all support the constitutionality of the federal machinegun ban. *See supra* pp. 13-29. But in any case, *Bruen* reaffirmed that the "examination of a variety of legal and other sources to determine the public understanding of a legal text" is "a critical tool of constitutional interpretation." 597 U.S. at 20 (emphasis and quotation marks omitted). "[H]istory guides the interpretation of vague constitutional text," *Rahimi*, 602 U.S. at 718 (Kavanaugh, J., concurring), and "determin[es] the scope of the pre-existing right that the people enshrined in our fundamental law," *id.* at 739 (Barrett, J., concurring). DeWilde elsewhere acknowledges that an analysis of text should be "informed by history." Br. 6 (quotation marks omitted). That text, as informed by history, supports the principle that resolves this appeal.

**b.** DeWilde further argues (at 17) that the reference to the militia in the prefatory clause of the amendment means that it at least covers M-16s as "standard-issue service weapons that were most suitable in militia and military service." But the Supreme Court could not have been clearer that the prefatory clause does not entitle civilians to weapons just because they are used in military service. It answered this objection exactly in *Heller*: "It may be objected that if weapons that are most useful in military service—M-16 rifles and the like—may be banned, then the Second Amendment right is completely detached from the prefatory clause." 554 U.S. at 627. This objection was erroneous, the Court explained, because "the conception of the militia at the time of the Second Amendment's ratification" was not the standing, professional military that we have today; it was instead a body of civilians who would bring the sorts of "lawful weapons that they possessed at home" to militia duty. *Id.* The historical "militia," which generally comprises "all able-bodied men," is not the same as the modern "military," which comprises members of the armed services. *Id.* at 596; U.S. Const. art. I, § 8, cls. 12-13, 15-16. The civilian militia was limited to those weapons "supplied by themselves" and "in common use" and "used in defense of person and home." *Heller*, 554 U.S. at 624-25 (quotation marks omitted). No one is entitled to "bombers and tanks" or M-16s, even though the military uses them. *Id.* at 627.

For similar reasons, DeWilde's argument that protecting M-16s would serve the purpose of the prefatory clause to "preserve the militia" is unavailing. Br. 17

(quotation marks omitted). The holding of *Miller*, as understood by *Heller*, and which has never been overruled, is that it does not diminish the militia to regulate short-barreled shotguns because such weapons are not "of the kind in common use at the time." *Miller*, 307 U.S. at 179; *Heller*, 554 U.S. at 624 (quotation marks omitted). So too for machineguns, including M-16s. In any event, "no law pursues its purposes at all costs," *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 150 (2023) (alterations and quotation marks omitted), and the Second Amendment is no different. "[T]he way in which the Second Amendment's operative clause furthers the purpose announced in its preface" is that it does not protect firearms "not typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 625. As repeatedly explained, machineguns are not typically possessed by law-abiding citizens for lawful purposes.

Indeed, that machineguns are "weapons that are most useful in military service" and law enforcement, *Heller*, 554 U.S. at 627, only underscores that they are not typically possessed by law-abiding citizens for lawful purposes. Like other machineguns, the M-16 was "originally designed for the U.S. military" and "originally manufactured almost exclusively for military use," *Definition of "Frame or Receiver" and Identification of Firearms*, 87 Fed. Reg. 24,652, 24,655 (Apr. 26, 2022). For this reason, Congress has long considered the M-16 and other machineguns to be "p[r]imarily weapons of war." S. Rep. No. 90-1501, at 28 (1968); *see Hollis*, 827 F.3d at 448 (same) (quotation marks omitted). The machinegun ban itself recognizes this status, as it exempts machineguns possessed or transferred by a federal authority like the United

31

States military. *See* 18 U.S.C. § 922(o)(2)(A). That machineguns are primarily used by the military and law enforcement underscores that they are not typically used by private civilians.

Finally, DeWilde's argument lacks any reasonable limiting principle. DeWilde would read into the Second Amendment an unqualified right for civilians to possess any military instrument. But civilians do not have a right to shoulder-mounted rocket-propelled grenade launchers, anti-tank weapons, guided missiles, or suitcase bombs. "[I]t is obvious that the Second Amendment does not protect the right to keep a nuclear weapon in one's basement, or a chemical or biological weapon[] in one's attic, or a tank in one's backyard." *Nordyke v. King*, 644 F.3d 776, 797 n.6 (9th Cir. 2011) (Gould, J., concurring in part and in the judgment), *aff'd en banc*, 681 F.3d 1041 (9th Cir. 2012). To the contrary, "a nuclear weapon . . . can be reserved for the military, even though it is light enough for one person to carry." *Bevis*, 85 F.4th at 1182. The same is true for machineguns like M-16s, and that is enough to resolve this constitutional challenge to the machinegun ban.

### B.    At the very least, Section 922(o) is not unconstitutional in all of its applications such that a facial challenge should prevail.

At the very least, DeWilde cannot prevail on his facial challenge to the ban. *See* ROA.2, 6, 7; Br. 3 (arguing that the district court should not have analyzed his claim "under the epithet of an 'as applied' application"); *id.* at 15 n.18 (arguing that the district court should not have analyzed his challenge "under the pretext of an as-

applied challenge"). Because DeWilde brings a facial Second Amendment challenge to the machinegun ban in its entirety, he must "establish that no set of circumstances exists under which the Act would be valid." *Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)).

> **1.    Not all machineguns are service rifles like M-16s.**

DeWilde cannot establish that the machinegun ban is "unconstitutional in all [of] its applications," *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019), because he only argues that he is entitled to an M-16 rifle, on grounds that are specific to the fact that it is "[t]he [s]tandard-[i]ssue [s]ervice [r]ifle of the United States [m]ilitary," Br. 20. Even if that were the case, the federal machinegun ban would remain valid as applied to all machineguns that are not the standard-issue service rifle of the United States military. DeWilde's argument that the machinegun ban would be unconstitutional in "every application of section 922(o)" to an M-16 fails to appreciate that in a facial challenge he must demonstrate that "the law is unconstitutional in all of its applications," not just its application to a particular model for idiosyncratic reasons. Br. 11, 13 (quotation marks omitted).

In any event, DeWilde cannot, as explained above, establish that the machinegun ban is invalid in its entirety because the machinegun ban is valid "as applied" to DeWilde and the M-16 rifle that he seeks to possess. *See Rahimi*, 602 U.S. at 693 (explaining that Rahimi's facial challenge to 18 U.S.C. § 922(g)(8) failed because "the provision is constitutional as applied to the facts of Rahimi's own case").

33

## 2.    Not all machineguns are bearable arms like M-16s.

DeWilde also cannot establish that the machinegun ban is invalid in its entirety because his argument that an M-16 is a "bearable arm[]" fails to appreciate that many machineguns are, in fact, not "bearable arms." The Second Amendment protects the right only to "keep and bear Arms"; it therefore extends only to "instruments that constitute bearable arms." *Heller*, 554 U.S. at 581-82. As DeWilde recognizes, "what makes a weapon 'bearable'" is an "essential question[]" for a Second Amendment challenge to a prohibition on a type of weapon. Br. 13 n.16 (alteration in original) (quoting *Harrel v. Raoul*, 144 S. Ct. 2491, 2492 (2024) (statement of Thomas, J.); *see* Appellant's Opening Brief at 16, *DeWilde v. United States*, No. 23-8054 (10th Cir. Sept. 5, 2023) (arguing that DeWilde "identified a limit . . . the Second Amendment extends, prima facie, to all instruments that constitute *bearable* arms." (quotation marks omitted)). Based on text, history, and tradition, a weapon must be something that a person can "wear[] for his defence, or take[] into his hands," *i.e.*, a "small-arms weapon[]" akin to those "used by militiamen" in "defense of person and home." *Heller*, 554 U.S. at 581, 624-25 (alteration and quotation marks omitted). As the district court explained, even if an M-16 may be a bearable arm, many machineguns are not (such as "aircraft-mounted [automatic] cannon[s]"). ROA.146.

## 3.    DeWilde's counterarguments are unavailing.

DeWilde argues (at 3, 9-14) that the district court erroneously assessed whether he had established that "no set of circumstances" exist under which the machinegun

ban would be valid. But that is what *Rahimi* instructed courts to do when they adjudicate a facial challenge to a federal firearms law under the Second Amendment. A facial challenge "affects the extent to which the invalidity of the challenged law must be demonstrated." *Bucklew*, 587 U.S. at 138. Because it is the "most difficult challenge to mount successfully," a plaintiff must "establish that no set of circumstances exists under which the Act would be valid." *Rahimi*, 602 U.S. at 693 (quotation marks omitted).

DeWilde argues that the court misapplied the test for facial challenges because it did not apply the "relevant constitutional test." Br. 10 (quoting *John Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012)). But it did. DeWilde brought a constitutional challenge based on the M-16's status as "[t]he [s]tandard-[i]ssue [s]ervice [r]ifle of the United States [m]ilitary," Br. 20, and he does not dispute that whether an arm is "bearable" is an "essential question" to assess the constitutionality of a ban on an arm, Br. 13 n.16 (alteration and quotation marks omitted). The district court appropriately assessed whether DeWilde's arguments for why his machinegun was protected by the Second Amendment extended to all machineguns. This is certainly a proper way to conduct an analysis of a facial challenge under *Salerno*, as a facial challenge "affects the extent to which the invalidity of the challenged law must be demonstrated." *Bucklew*, 587 U.S. at 138. DeWilde's argument (at 14) that this approach has no "limiting factor" is misguided; the limiting principle is that the challenger simply must make an argument that logically supports invalidation of a

35

statute in its entirety. Because DeWilde did not, the district court properly rejected his facial challenge.[20]

Finally, on the merits, DeWilde briefly contests the court's conclusion that the Second Amendment is textually limited to "bearable arms." DeWilde asserts that the text is "unqualified" and has no textual limits. Br. 9 (quotation marks omitted). But the Second Amendment by its terms protects only the right to "keep and bear Arms," which means that those arms must be kept and carriable. As explained, that is supported by the definitions of those terms at the time, *see Heller*, 554 U.S. at 581-82, the relationship between the prefatory and the operative clause, *see id.* at 625-27, and the historical understanding that the militia's weapons were small-arm weapons used in defense of self and home, *see id.*

DeWilde's attempt to resist this conclusion (at 8) on the historical grounds that "private citizens owned cannons and warships" during the founding era only underscores that such weapons were not understood to be bearable arms protected by

---

[20] DeWilde suggests (at 11) that "cannons weren't at issue before the court," and the district court improperly injected this issue into the litigation, but it did not. DeWilde's opposition to the motion to dismiss argued that an M-16 fell within the "plain text of the Second Amendment" because the amendment extends to "all instruments that constitute bearable arms," and an "M16 is a bearable machinegun." ROA.84 (quotation marks omitted). The district court properly assessed whether that argument supported a facial challenge to the statute. Indeed, DeWilde himself brought to the court's attention *United States v. Morgan*, No. 23-CR-10047 (D. Kan. Aug. 21, 2024), which explained that a facial challenge could not succeed. *See* ROA.103, 112. Regardless, it is commonplace to test the limits of a party's position by reference to other applications of a statute, and that practice is particularly appropriate for a facial challenge.

the Second Amendment. It was well understood that the government could disarm private armed vessels. Congress understood itself to possess this authority. *See, e.g.*, John Adams, *Special Message to the Senate and the House* (May 16, 1797) ("It remains for Congress to prescribe such regulations as will enable our seafaring citizens to defend themselves against violations of the law of nations, and at the same time restrain them from committing acts of hostility against the powers at war."); Act of March 3, 1805, ch. 42, § 3, 2 Stat. 342, 343 (requiring vessel to forfeit arms if it "proceed[s] to sea without a clearance" for travel to the West Indies). The Executive Branch understood itself to possess this authority as well. *See, e.g.*, Letter from Albert Gallatin to Thomas Jefferson (June 7, 1804) ("[A]s early as 1793 and afterwards again in 1797, private armaments, except for the East Indies, were absolutely forbidden by the President, and the order enforced by directing the collectors to refuse clearances to armed vessels."); John Adams, *Special Message to the Senate and the House* (May 16, 1797) ("I have thought proper to prevent the sailing of armed vessels except on voyages to the East Indies . . . ."); Letter from Thomas Jefferson to William Branch Giles (Jan. 18, 1805) (endorsing laws that provided that vessels "cannot arm for defence or other use, but with [executive] permission"). The government has repeatedly exercised that authority, most famously under the Neutrality Acts before World War II. *See* Neutrality Act of November 4, 1939, ch. 2, § 6, 54 Stat. 4, 7 (making it unlawful for a private merchant vessel "to be armed, except with small arms and ammunition

therefor"). That DeWilde suggests these laws unconstitutional is only another reason to reject his position.

DeWilde's reference (at 8) to privateers is even less persuasive. A privateer is a privately owned merchant ship that, during wartime, is "armed and fitted out at private expense for the purpose of preying on the enemy's commerce to the profit of her owners, and *bearing a commission, or letter of marque, authorizing her to do so, from the Government*." Edgar Stanton Maclay, *A History of American Privateers* 7 (1899) (emphasis added). It took a discretionary governmental license to serve as a privateer. *See, e.g.*, Act of March 23, 1776 (Continental Congress); Act of June 26, 1812, ch. 107, 2 Stat. 759, 759-64. Otherwise, a privateer was a pirate. *See* Georg Friedrich von Martens, *An Essay on Privateers, Captures, and Particularly on Recaptures* 2-3 (1801) ("[P]rivateers may become pirates, when they transgress the limits prescribed to them."). Because the machinegun ban is valid in all of its applications, including as applied to M-16s and heavy automatic weapons (and even those guns on armed vessels), this Court should affirm.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

NICHOLAS VASSALLO
*United States Attorney*

MICHAEL S. RAAB

*s/ Ben Lewis*
BEN LEWIS
*Attorneys, Appellate Staff*
*Civil Division, Room 7250*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2494*
*benjamin.r.lewis@usdoj.gov*

December 2024

## REQUEST FOR ORAL ARGUMENT

Appellee does not request oral argument.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,079 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Ben Lewis*
Ben Lewis

**CERTIFICATE OF SERVICE**

I hereby certify that on December 11, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ Ben Lewis*
Ben Lewis

**ADDENDUM**

## TABLE OF CONTENTS

18 U.S.C. § 922........................................................................................................... A1

**18 U.S.C. § 922**

**§ 922. Unlawful Acts**

. . .

(o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.

(2) This subsection does not apply with respect to—

   (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or

   (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.